Robert (Bobby) SMITH, et al., Plaintiffs,
v.
Vernon Lee BOUNDS, et al., Defendants.

Donald W. MORGAN, et al., Plaintiffs,
v.
R.L. TURNER, Defendant.

John HARRINGTON, et al., Plaintiffs,
v.
James HOLSHOUSER, et al., Defendants.

Civ. Nos. 3052, 4277 and 790.

United States District Court, E.D. North Carolina.

July 29, 1985.

On Renewed Motion for Reconsideration March 11, 1986.

Barry Nakell, Chapel Hill, N.C., for plaintiffs.

Jacob L. Safron, Asst. Atty. Gen., N.C. Dept. of Justice, Raleigh, N.C., for defendants.

## ORDER

DUPREE, District Judge.

Before the court at this time is defendants' motion for reconsideration of this court's order of May 14, 1985 directing the defendants to submit a plan providing inmates with some form of assistance of

counsel. Defendants have filed this motion pursuant to Rule 60(b), F.R.Civ.P. Although defendants do not cite which subsection of Rule 60(b) they wish to proceed under, it appears from the general tenor of their memorandum that they contend that the judgment should be reconsidered based on excusable neglect pursuant to Subsection 1 of that rule.[1] Defendants argue that the affidavits and other materials attached to their memorandum show that they were in compliance with their plan to provide inmates adequate law library facilities, but due to the failure of their attorney to collect and file these materials pursuant to the court's order of December 21, 1984, they were found not to have complied. They now seek an order reversing the court's prior decision and finding instead, that they have met their constitutional obligation to provides inmates with adequate access to the courts.

■ This motion will be denied. While the materials attached to defendants' motion do indicate that the state was making efforts to comply with its plan, they have failed to show that counsel's neglect in ignoring this court's order of December 21, 1984 was excusable. In the affidavits submitted by Attorney General Thornburg, by Assistant Attorney General Safron, who has been supervising the case over the last ten years, and by other employees of the Attorney General's office and the Department of Correction defendants give no reasons as to why Safron's failure to comply with the court's order was excusable.

With respect to his supervision over this case, Attorney General Thornburg states in his affidavit that "[a]lthough all of my staff attorneys are under my supervision, almost none of them are under my direct supervision, and obviously I am unable to supervise every case each of them handles in their representation of the State of North Carolina." This is certainly understandable, and the court has never assumed that the Attorney General or his predecessors in office would have personal knowledge of the innumerable orders which have issued in this case. The fact remains, however, that throughout the course of this litigation the state has failed to comply with a number of this court's orders. In their memorandum opposing defendants' motion, plaintiffs cite eleven other instances where defendants failed to respond to the court's orders. The state's failure to comply with the December, 1984 order was quite simply the straw that broke the camel's back and showed that the state has been unwilling or unable to comply with a plan submitted and approved more than ten years ago.

To bring themselves within Rule 60(b), the defendants must make a showing of timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances. *Werner v. Carbo*, 731 F.2d 204, 206–207 (4th Cir. 1984). Defendants' motion is timely, and they have presented quite a bit of evidence regarding their claim of a meritorious defense. However, assuming arguendo that reconsideration of the court's prior order would not result in unfair prejudice to the plaintiffs, defendants have totally failed to show exceptional circumstances in this case. Courts have consistently refused to relieve parties of the burdens of a final judgment due to mistakes or omissions of their attorneys, and the carelessness of an attorney is not generally cognizable under Rule 60(b)(1). *United States v. Cirami*, 535 F.2d 736, 739 (2d Cir.1976); *Cline v. Hoogland*, 518 F.2d 776, 778 (8th Cir.1975); *Wood v. Kling*, 98 F.R.D. 319 (E.D.Va. 1983).

Furthermore, as stated before, defendants' failure to respond to the December 21, 1984 order was not an isolated incident. Clearly, defendants knew or should have known that counsel had a history of failing to respond to the court's orders. Thus, the case cited by defendants in which the court

---

**1.** The motion may also be construed pursuant to Rule 60(b)(6) which permits reconsideration for "any other reason justifying relief from the op-

eration of the judgment." At any rate, the same analysis would apply to either subsection.

ruled that an assistant attorney general's failure to represent the state's interest in federal proceedings constituted excusable neglect is factually distinguishable from this case. *See Naples v. Maxwell*, 368 F.2d 219 (6th Cir.1966); *cert. denied*, 386 U.S. 971, 87 S.Ct. 1165, 18 L.Ed.2d 131 (1967). Indeed, Department of Correction employees could have complained to the Attorney General at any time if they felt that Mr. Safron was not adequately supervising their case.

Accordingly, for the reasons set out herein, defendants' motion for reconsideration of the court's order of May 14, 1985 is denied. Defendants will have thirty days from the date of this order to submit their plan for providing inmates with the assistance of counsel in a constitutionally adequate manner.

SO ORDERED.

### ON RENEWED MOTION FOR RECONSIDERATION

This action is once again before the court on defendants' renewed motion for reconsideration of the court's order of May 14, 1985 directing defendants to provide some form of attorney assistance to North Carolina's inmates. Defendants requested leave to file this motion at a hearing held February 10, 1986 to discuss the parties' respective plans for providing inmates with attorney assistance. The court indicated that it would permit defendants to file their renewed motion, largely because it has raised concerns which the court feels may have not been fully addressed in prior orders.

As the parties well know, this action was not initially assigned to the undersigned. The finding that inmates are constitutionally entitled to either adequately equipped law libraries or the assistance of counsel had been made and affirmed by the Supreme Court before this court ever took jurisdiction over the case. *See Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). This court has always

been troubled by this decision, for it effectively gives convicted criminals more access to the courts than most average citizens who have never committed a crime in their lives and who presumably are entitled to more rights than those criminals. Nevertheless, this court is bound by the Supreme Court's decision and is also bound to insure that defendants' obligation under that decision is carried out.

In support of their motion for reconsideration, defendants raise essentially two grounds. First, they assert that the court's May 14, 1985 decision is in contravention of the Supreme Court's holding that it is the state's right to choose whether it will provide inmates with law libraries or attorneys. Second, defendants assert that given the opportunity, the state could show that it has complied with its plan and has provided inmates with constitutionally adequate law libraries. These contentions will be addressed seriatim.

In the May 14 order, the court discussed extensively the opinion and order of United States District Judge Charles R. Scott in *Hooks v. Wainwright*, 536 F.Supp. 1330 (M.D.Fla.1982). *Hooks* involved a civil rights action by Florida inmates challenging the adequacy of their access to the courts. As in this case, the litigation meandered through the courts for several years. After the *Bounds* decision came down, the defendants submitted a plan for providing inmates with law libraries. This plan was immediately attacked by plaintiffs, who by that time had obtained the assistance of Florida Institutional Legal Services, Inc. Although the parties attempted to compromise on the issue, their efforts failed, and they consequently requested Judge Scott to enter an appealable order regarding whether the assistance of attorneys, in some form, was an essential ingredient of Florida's attempt to comply with the mandate of *Bounds v. Smith*. For the reasons discussed on pages 14 through 17 of this court's May 14 opinion, Judge Scott found that it was. 536 F.Supp. at 1340–1352.

On appeal, the Eleventh Circuit Court of Appeals reversed Judge Scott's decision,

holding that "the district court erred in requiring that *any* Florida library plan, devised to ensure constitutional access to the courts by state inmates, must include a provision for attorney assistance." *Hooks v. Wainwright,* 775 F.2d 1433, 1438 (11th Cir.1985) (emphasis in original). The court stated that under *Bounds v. Smith,* it was the state's decision whether to provide inmates with law libraries or attorneys. Defendants in this action now argue that based on this recent decision, this court's prior opinion requiring North Carolina to provide its inmates with some form of attorney assistance should be reversed.

■ However, for the following reasons, the court disagrees. In *Hooks,* the defendants were not given the opportunity to try their proposed plan. Judge Scott held that no law library plan would provide all Florida inmates with adequate access to the courts. Conversely, defendants in this case had their plan approved by a judge of this court more than ten years ago. It was their failure after all those years to properly implement that plan which forced this court to conclude that defendants would not or could not provide inmates adequate access to the courts through the use of law libraries. Although this court cited Judge Scott's opinion extensively in discussing the *preferability* of a plan which provides inmates with the assistance of counsel, the grounds for the court's decision was defendants' own failure to implement their plan. This issue was never reached in *Hooks.* Consequently, this court does not consider the Court of Appeals' decision to be dispositive.

Quite frankly, the undersigned is of the opinion that the May 14, 1985 order is in complete harmony with the Supreme Court's decision in *Bounds v. Smith.* The issue before the court in that case, stated in the first sentence of the opinion, was

"whether States must protect the right of prisoners to access to the courts by providing them with law libraries or alternative sources of legal knowledge." 430 U.S. at 817, 97 S.Ct. at 1491. The Court held that the states did have such an obligation. The question of the adequacy of the state's law library plan was not before the Court, and the Court declined at that time to require states to include any "particular element" in their plans. 430 U.S. at 832, 97 S.Ct. at 1500. However, the Court did state that "[a]ny plan ... must be evaluated as a whole to ascertain its compliance with constitutional standards." *Id.*

During the past ten years since the Supreme Court's opinion in *Bounds v. Smith,* this court has retained jurisdiction over the case to insure that the state met the obligations imposed upon it pursuant to its plan. However, since that time the Court of Appeals has twice held that defendants were not meeting that obligation. After defendants' final failure to respond to the mandate of the Fourth Circuit and to this court's orders, the court was forced to conclude that defendants could not assure inmates adequate access to the courts through its law library plan. The court finds nothing in the Supreme Court's opinion which would prohibit such a finding. Rather, the Supreme Court imposed an affirmative duty on the district courts to evaluate a state's plan to ascertain its compliance with constitutional standards.[1] This is exactly what this court did in the May 14, 1985 opinion, concluding that defendants' failure to properly implement their law library plan rendered that plan constitutionally inadequate and finding that under these circumstances, a plan providing some form of attorney assistance was the only way to assure that the mandate of *Bounds v. Smith* would be met.

---

1. Interestingly, two members of the Eleventh Circuit Court of Appeals concluded that this was precisely the issue before the court in *Hooks v. Wainwright.* In their dissent to the decision of the majority denying plaintiffs' petition for rehearing and rehearing en banc, *see* 781 F.2d at 1550–1551 (11th Cir.1986), they argued that the issue before them was not whether, given that either law libraries or attorney assistance was constitutionally adequate, the court could require one or the other. Rather, they contended, the question that they were being asked to decide was whether, given that law libraries *failed* to provide meaningful access to a group of illiterate prisoners, the court could require the state to furnish assistance of counsel to that group.

In support of their second argument, defendants assert that, given the opportunity, they could show that at the time of the May 14 opinion, they were meeting their constitutional obligations, but due to the failure of Deputy Attorney General Jacob Safron, the attorney formerly assigned to the case, to respond to the court's prior orders, they were not given the opportunity to show what efforts they had made.

In this latest motion, defendants do not appear to be arguing that the actions of Mr. Safron constituted excusable neglect. Indeed, at the February 10, 1986 hearing, the Chief Deputy Attorney General stated that former counsel's actions were "totally inexcusable." Instead, defendants appear to contend that counsel's actions were an isolated incident which neither the defendants nor counsel's supervisors could have anticipated. *See Naples v. Maxwell*, 368 F.2d 219 (6th Cir.1966), *cert. denied*, 386 U.S. 971, 87 S.Ct. 1165, 18 L.Ed.2d 131 (1967). Defendants also cite *New York State Health Facilities Association, Inc. v. Carey*, 76 F.R.D. 128 (S.D.N.Y.1977), in which the district court set aside a default judgment in plaintiff's favor, holding that it would be unfair to the taxpayers of New York to be punished by the negligent actions of the state attorney general's office where they had little or no control over the attorneys involved in the case.

However, this case presents a different set of circumstances. Here, the actions of counsel which precipitated the May 14, 1985 order and opinion were not isolated incidents. As outlined in the court's July 29, 1985 order denying defendants' initial motion for reconsideration, the state had failed eleven other times over the course of this litigation to timely respond to this court's orders. As Judge Sprouse put it in *Harrington v. Holshouser*, 741 F.2d 66, 69 (4th Cir.1984), "[a] description of the State's efforts ... is a chronology of failure." Thus, the state's failure to comply with the court's orders cannot be laid solely at Mr. Safron's door.

Furthermore, while the taxpayers of North Carolina may ultimately be responsibility for the funding of any new legal assistance plan, the actual defendants in this case are officials of the Department of Correction. Unlike the average citizen, they have been actively involved in this litigation and could have complained to Mr. Safron's superiors had they any concerns about his handling of the case. Thus, the court concludes that defendants must share the responsibility for counsel's failure to provide the court with sufficient information to determine the adequacy of the law library plan. That being the case, they have failed to set forth sufficient grounds to warrant reversal of the court's May 14, 1985 opinion and order. Accordingly, for the reasons set out herein, their motion for reconsideration of that order is denied.

SO ORDERED.