813 F.2d 1299
 Robert (Bobby) SMITH; Ronald D. Carnes; Bradford Mizell
Lilley; Donald W. Morgan; Franklin D. Strader; John H.
Russell; John Harrington; Alonzo Watts; Clifton Speight;
William Ryder; Ronney McBride; Ray Forbes, Plaintiffs-Appellees,
v.
Vernon Lee BOUNDS, Commissioner, State Department of
Corrections; Stanley Blackledge, Warden, Central State
Prison; R.L. Turner, Superintendent of Odom Correctional
Institution of the North Carolina Department of Corrections;
James Holshouser, Governor, State of North Carolina; F.R.
Moore, Sergeant, Central Prison; Franklin Mahan, Regional
Superintendent; M.S. Lee, Captain, Washington County Unit
3560, Defendants-Appellants.
 No. 86-7579.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 11, 1986.
Decided March 18, 1987.
 
 Andrew Albert Vanore, Jr., Chief Deputy Atty. Gen. (Lacy H. Thornburg, Atty. Gen., Sylvia Thibaut, Asst. Atty. Gen. on brief), for appellants.
 Barry Nakell, School of Law, University of North Carolina, Chapel Hill, N.C., on brief for appellees.
 Before WINTER, Chief Judge, SPROUSE, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 HARRISON L. WINTER, Chief Judge:
 
 
 1
 At the time of argument, this litigation had been in progress for over 13 years. We have had three previous appeals[1], and the underlying principles which govern the litigation have been decided by the Supreme Court. Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). It was held that the fundamental constitutional right of access to the courts possessed by prisoners in custody under state process required state prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.[2]
 
 
 2
 Since the Supreme Court spoke in 1977, the thrust of this litigation has been to require North Carolina to meet these minimum standards. North Carolina, as was its option, sought to bring itself into compliance by the establishment of "adequate law libraries," but it never succeeded in establishing a program that would survive scrutiny by the district court and by us. As we observed in 1984 "seven years after the Supreme Court decision on Bounds v. Smith, the same legal action remains still unresolved on this appeal despite [plaintiff's] efforts, through a series of petitions and motions to ensure compliance with the Supreme Court's mandate." Harrington II, 741 F.2d at 67.
 
 
 3
 After we last remanded the case in 1984, the district court by order entered on December 21, 1984 required defendants to submit materials, within thirty days, to show that "they are or shortly will be in compliance with their plan [to provide adequate law libraries]." When defendants failed to respond, the district court made a careful analysis of North Carolina's proposals then before it and concluded that they were constitutionally deficient in at least three respects: (a) the absence of facilities for indigent inmates to photocopy without charge materials required to be filed with a court; (b) the omission of programs to train inmates as paralegals; and (c) the unavailability of prison law libraries for all inmates. Having found the "state's inability or an unwillingness to implement its plan," the district court concluded that it must decree some form of assistance from trained attorneys, and on May 14, 1985 it filed its opinion indicating that it would grant such relief. 610 F.Supp. 597. It also ordered the state to devise a plan to provide inmates with some form of attorney assistance.
 
 
 4
 After the state submitted a plan for attorney assistance and a hearing was held, the district court, on April 10, 1986, issued a second order which directed the state to provide such assistance through attorneys who were to be hired and administered by Prison Legal Services of North Carolina. 657 F.Supp. 1327 (E.D.N.C.1986).
 
 
 5
 Three times defendants sought reconsideration of the May 14, 1985 order requiring the state to present a plan for attorney assistance. They sought reconsideration primarily on the ground that defendants' lawyer, Assistant Attorney General Jacob L. Safron who had represented them throughout the over ten-year period of this litigation, had inexcusably neglected to present evidence to the district court that the state's law libraries plan was in compliance with constitutional standards. The district court denied reconsideration, 657 F.Supp. 1322, and after entry of the April 10, 1986 order, defendants appealed.
 
 
 6
 Before us defendants argue that the district court abused its discretion both in ordering that a lawyer assistance plan be formulated and in denying reconsideration of the order. Subsidiary contentions are that the district court violated the law of the case in ordering the plan to be established and that the district court abused its discretion by certifying the action as a class action. We are not persuaded that there was any error and we affirm.
 
 I.
 
 7
 We perceive no abuse of discretion on the part of the district court in requiring the establishment of a legal assistance program.
 
 
 8
 A district court enjoys wide discretionary authority in formulating remedies for constitutional violations. After a finding of systemic constitutional violations, a court may order necessary changes in the structures or procedures of a state institution to alleviate those violations, Hutto v. Finney, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); Milliken v. Bradley (Milliken II ), 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977), and its formulation of relief is reversible only for an abuse of discretion. Milliken II, 433 U.S. at 288, 97 S.Ct. at 2761; Vaughns v. Bd. of Education of Prince George's County, 758 F.2d 983, 993 (4 Cir.1985); Harper v. Kloster, 486 F.2d 1134, 1137 (4 Cir.1973).
 
 
 9
 The district court's remedy was a reasonable choice among its alternatives to deal with the constitutional violation that it found. See Milliken II, 433 U.S. at 281-82, 97 S.Ct. at 2757-58 (the nature and scope of the remedy are to be determined by the violation). "It is now established beyond doubt that prisoners have a constitutional right of access to the courts." Bounds v. Smith, 430 U.S. at 821, 97 S.Ct. at 1494. The district court evaluated the program of the Department of Corrections "as a whole, to ascertain its compliance with constitutional standards." Id., 430 U.S. at 832, 97 S.Ct. at 1500. The burden of proving compliance with constitutional standards was on the Department of Corrections. Harrington II, supra. The defendants failed to meet this burden when they did not file any materials showing compliance with constitutional standards following both an order from the district court requiring that the state demonstrate compliance and a motion for summary judgment. Consequently, the district court entered summary judgment for the plaintiffs.
 
 
 10
 The district court made several findings, based on the record before it, which indicated the state was not in compliance with constitutional standards. First, the court found that the state had not demonstrated that it provides indigent inmates with facilities to photocopy free of charge all materials required to be filed with a court. Second, the state had not demonstrated that it had provided for the training and placement of any inmate paralegals. Finally, the record indicated that a large number of law library requests had been denied without explanation. Accordingly, the district court concluded that, after ten years, the state was still not in compliance with its constitutional obligation to provide inmates in North Carolina with meaningful access to the courts. Based on the record that was before the district court, these findings are not contested by the parties.
 
 
 11
 The district court did not conclude, as the defendants contend, that prisoners have a constitutional right to access to an attorney. The district court ordered a remedy of attorney assistance because the state's program of law libraries had failed to meet the defendants' constitutional obligation of providing meaningful access to the courts. The district court's remedy flowed logically from Bounds. Bounds held that either remedy, law libraries or attorney assistance, could fulfill the constitutional requirement of access. Once the state foreclosed the remedy of law libraries, the remaining choice was obvious. The alternative to a system of libraries was some form of assistance to prisoners from trained attorneys. See Hutto v. Finney, 437 U.S. at 687, 98 S.Ct. at 2572 ("[t]aking the long and unhappy history of the litigation into account, the court was justified in entering a comprehensive order to insure against the risk of inadequate compliance").
 
 
 12
 It is too late in the day to argue that the presence of attorney assistance for prisoners would be a burden on the state. The Supreme Court stated in Bounds v. Smith that legal assistance would have several advantages over libraries alone, including mediation and resolution of complaints that would otherwise burden officials and the courts. 430 U.S. at 830-32, 97 S.Ct. at 1499-1500. The Court noted that nearly half the states already provide some type of legal assistance to prisoners. Id., 430 U.S. at 830-31, 97 S.Ct. at 1499-1500. The district court's order requiring that the state devise an appropriate plan of attorney assistance simply does not constitute the type of restructuring of local government entities which implicates principles of federalism. Milliken II, 433 U.S. at 291, 97 S.Ct. at 2762.
 
 
 13
 The district court also properly exercised its discretion when it ordered that attorneys provided by the State be hired by Prison Legal Services of North Carolina. The state's plan, as the district court found, failed to guarantee that attorneys would be independent, as well as perceived as independent, of the Department of Corrections. Without such independence, the plan could not succeed in providing meaningful access to the courts or in discouraging frivolous complaints from prisoners.
 
 
 14
 The state also argues that the district court abused its discretion by ordering relief in the form of legal assistance when it could have sought contempt orders against the defendants. The contempt power of a court does not limit its discretion to fashion equitable remedies. Berger v. Heckler, 771 F.2d 1556, 1569 (2 Cir.1985); Alexander v. Hill, 707 F.2d 780, 783 (4 Cir.1983), cert. denied sub nom, Syria v. Alexander, 464 U.S. 874, 104 S.Ct. 206, 78 L.Ed.2d 183 (1983); Smith v. Miller, 665 F.2d 172, 175 (7 Cir.1981). "The court is invested with broad equitable powers and simply should not be compelled to operate in a punishment or nothing atmosphere." Alexander v. Hill, supra, 707 F.2d at 783. Contempt sanctions could not promise immediate alleviation of the constitutional defect in this case given the history of foot-dragging that the district court found on the part of the state. Id. ("Alleviation rather than sanction" is the goal.) See Milliken II, 433 U.S. at 280 n. 15, 97 S.Ct. at 2757 n. 15 (federal courts are authorized to implement plans that promise "realistically to work now."). Moreover, orders to show cause against a wide range of state officials with the duty of implementing the law library plan would have been more intrusive on state decisionmaking than the district court's chosen remedy. Adjudication of contempt orders during the enforcement of injunctive relief guarantees a "major continuing intrusion of the equitable power of the federal court into the daily conduct of state ... proceedings [and] is in sharp conflict with the principles of equitable restraint which this court has recognized." O'Shea v. Littleton, 414 U.S. 488, 502, 94 S.Ct. 669, 679, 38 L.Ed.2d 674 (1974).
 
 II.
 
 15
 Nor do we think that there was any abuse of discretion in the three denials of defendants' motions for reconsideration. A district court's decision to deny reconsideration will be disturbed only if the court abused its discretion. Werner v. Carbo, 731 F.2d 204 (4 Cir.1984). To merit reconsideration, a motion must be timely and premised on a meritorious defense, an absence of prejudice to the opposing party, and exceptional circumstances. Id., at 206-07; Compton v. Alton Steamship Co., 608 F.2d 96, 102 (4 Cir.1979). The motion in this case was timely and premised on a meritorious defense. The documents submitted to the district court in support of the motion for reconsideration indicate that the state law library system may have been in compliance with constitutional requirements. There is also no reason to believe that the plaintiffs would have been prejudiced by a reconsideration based on the merits of the defendants' argument that they are in compliance.
 
 
 16
 There remains, however, the issue of exceptional circumstances. The movant must satisfy one or more of Rule 60(b)'s six grounds for relief from judgment. In this case, the defendants claim that the district court should have granted their motion because of their claim of excusable neglect, FRCP 60(b)(1), because the judgment was void, FRCP 60(b)(4), and because they offered other just reasons justifying relief from the judgment, FRCP 60(b)(6). We consider these grounds seriatim.
 
 
 17
 Under Rule 60(b), a movant is entitled to relief from judgment for reasons which include, under subsection (1), mistake, inadvertence, surprise or excusable neglect. Defendants contend that they failed to comply with the orders of the district court due to excusable neglect. They admit that Assistant Attorney General Safron's neglect of the court's orders was inexcusable. The defendants contend, however, that they excusably neglected to obey the orders of the court because they reasonably relied on Mr. Safron to carry out his duties. Affidavits from attorneys and officials of the Department of Corrections, submitted by the state, declare that state officials had gathered materials for the court relevant to its orders, but assumed that Mr. Safron was attending to compliance with the court's orders. The Attorney General for the State declares that supervision of the cases assigned to his assistants is impossible and that he must place exclusive reliance on his assistants.
 
 
 18
 In our view, defendants have not established excusable neglect for purposes of 60(b)(1). The attorney's neglect in this case was serious and unexcused. The Attorney General's and the Department of Correction's failure to supervise Mr. Safron do not make his neglect excusable. Universal Film Exchanges, Inc. v. Lust, 479 F.2d 573, 576 (4 Cir.1973) (gross negligence of counsel does not constitute excusable neglect by the defendants).[3] If we were to credit fully the defendants' arguments, a state would never be responsible for the neglect of its assistant attorney generals. This would undermine the adversarial system. See Link v. Wabash Railroad Co., 370 U.S. 626, 634, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962). In addition, from our own experience we are well aware that supervision of case assignments is possible in a large legal office through an administrator who is in charge of tracking deadlines. Finally, we note that Mr. Safron was not the only attorney of record in this case, any number of attorneys could have monitored the court-ordered deadlines. Nor was the district court unduly strict about enforcing its orders. The district court did not enter summary judgment for the plaintiffs on the issue of noncompliance until several months after the deadline for demonstrating compliance had passed. In argument, counsel for plaintiffs tells us that he literally begged Mr. Safron for compliance. Thus, reliance of the defendants on Mr. Safron should not convert Mr. Safron's neglect into excusable neglect.
 
 
 19
 Reconsideration is also appropriate where a judgment is void due to the district court's lack of jurisdiction. FRCP 60(b)(4). The defendants contend that reconsideration was required because the court's judgment violated the law of the case which operated as a limit on the jurisdiction of the district court. We are not persuaded. The law of the case is a rule of discretion and not a jurisdictional requirement. Piambino v. Bailey, 757 F.2d 1112, 1120 (11 Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 2889, 90 L.Ed.2d 976 (1986). Moreover, as we show later, there is no merit in the argument that the district court violated the law of the case.
 
 
 20
 In some instances, appellate courts have employed the catch-all provision of FRCP 60(b)(6) to order reconsideration of default judgments which resulted from neglect of counsel. Boughner v. Secretary of HEW, 572 F.2d 976 (3 Cir.1978); Wright & Miller, Federal Practice & Procedure, Sec. 2864 & n. 50. "[A] sound discretion hardly comprehends a pointless exaction of retribution. Dismissals for misconduct attributable to lawyers and in no [way] to their clients invariably penalize the innocent and may let the guilty off scott-free." Jackson v. Washington Monthly Co., 569 F.2d 119, 123 & n. 23 (D.C.Cir.1977) (and cases cited therein). Moreover, public confidence in the legal system is undermined when a litigant's claim is dismissed due to the blameworthy actions of their counsel. Id. The litigant does have recourse in such a case--a malpractice action--but that approach may not result in a hearing on the merits of the plaintiff's case. The court, however, does have an alternative to a default judgment; it may seek contempt sanctions against counsel. Id., at n. 24.
 
 
 21
 Under these authorities, Mr. Safron's neglect to comply with the district court's order to demonstrate compliance, considered in isolation, may have warranted reconsideration by the district court. Under such circumstances, justice would probably require that the district court reach a decision on the merits. Compton v. Alton Steamship Co., supra, 608 F.2d at 102-03; Tolson v. Hodge, 411 F.2d 123, 130 (4 Cir.1969). These considerations are, of course, equally applicable to litigation between private parties as to litigation in which a government is a party. However, Mr. Safron's neglect was part of a decade-old pattern of neglect and delay. In Harrington II, we characterized "the State's efforts in this area" as "a chronology of failure." 741 F.2d at 69. As the district court stated below, "The plaintiffs cite eleven other instances where defendants failed to respond, to the court's orders. The state's failure to comply with the December 1984 order was quite simply the straw that broke the camel's back ... Clearly, the defendants knew or should have known that counsel had a history of failing to respond to the court's orders."
 
 
 22
 The history of the defendants' neglect of its duties in this case, as recounted by the district court, is set forth in the margin.[4] We find it correctly described.
 
 
 23
 Under these circumstances, the district court did not abuse its discretion by denying the motion for reconsideration. Appellate courts have generally approved of dismissal of a client's action due to counsel's conduct "when the attorney has taken a course of protracted neglect." Jackson v. Monthly Co., supra, 569 F.2d at 121 & n. 10 & 11 (and cases cited therein). Consistent with its role and function as a court, the district court could not sanction this extensive history of nonfeasance. Even when a sovereign state is a litigant, there comes a time when further delay cannot be tolerated. In this case, that time was well past. Cf. Green v. County School Board, 391 U.S. 430, 439, 88 S.Ct. 1689, 1694, 20 L.Ed.2d 716 (1968) ("the burden on a school board today [in remedying desegregation] is to come forward with a plan that promises realistically to work ... now").
 
 III.
 
 24
 Defendant's other contentions do not require lengthy discussion. The argument that the district court violated the law of the case and that its judgment is thus void is answered by the fact that we remanded the case to determine whether North Carolina had established a prison library system which met Constitutional standards. We did not decide that only a prison library system would satisfy the requirements of Bounds. The law of the case doctrine does not govern issues which the appellate court did not address. Piambino v. Bailey, supra, 757 F.2d at 1120. Once the district court found that North Carolina had not proved its case, it was free to adopt the other remedy approved by the Supreme Court in Bounds.
 
 
 25
 We see no reversible error in the district court's certifying a class on October 16, 1985. Plaintiffs had sought from the institution of the case to maintain it as a class action. The district court deferred certification of a class because it thought that certification could be avoided if more inmates were substituted as party plaintiffs for those original plaintiffs who died or were released. When the district court concluded to certify the class prior to entering its final judgment, the requirements for certification were all met and defendants were not prejudiced thereby, especially since they had conducted the litigation as a class suit.
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 Smith v. Bounds, 538 F.2d 541 (4 Cir.1975), affirmed, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); Harrington v. Holshouser, 598 F.2d 614 (4 Cir.1979) (unpublished) (Harrington I ); Harrington v. Holshouser, 741 F.2d 66 (4 Cir.1984) (Harrington II )
 
 
 [2]
 The Court pointed out that its specific holding had been foreshadowed by the result reached by Younger v. Gilmore, 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971), some 6 years earlier. 430 U.S. at 828-89, 97 S.Ct. at 1498-99
 
 
 [3]
 It is not without significance that the Attorney General still relies on Safron. We are aware that he was sole counsel representing North Carolina in another appeal which was argued during the December, 1986, session of the court
 
 
 [4]
 In 1974, the district court ordered the state to establish regional law libraries in prisons across the state and file a certificate of compliance within 120 days. This decision was affirmed by us in 1975 and the Supreme Court in 1977. The state did not advise the district court of its progress until more than a year after the Supreme Court's decision
 After further proceedings, the plaintiffs filed their first set of interrogatories on July 26, 1979. The defendants did not answer for three months. Plaintiffs then filed a motion to compel. Defendants then requested and received an extension to answer until November 1, 1979.
 The extended deadline for answering the interrogatories then passed without the defendants providing any answers. A hearing was set for June 3, 1980 which prompted the defendants to file their answers on May 29, 1980, almost seven months past the November extended deadline.
 The defendants' answers, which were filed May 29, 1980, were contained in an affidavit from the Deputy Director of the Division of Prisons. The affidavit was dated November 6, 1979.
 On February 17, 1981, the district court ordered the defendants to submit within 90 days a statement of the means by which they would train inmate paralegals. They were also ordered to file within 30 days a profile of the operation of the use of law library facilities by inmates in disciplinary segregation. The thirty days passed without response. On May 8, the defendants asked for and received an extension until August 7. They filed their response on that date which consisted of two affidavits.
 Plaintiffs later served another set of interrogatories on September 9, 1982. The State provided no answers and so the plaintiffs sought a motion to compel. This motion was unopposed, the court granted the motion on December 1. On December 9, the defendants sought and received an extension to answer until January 15. Defendants filed their answers on January 11.
 On January 28, 1982 plaintiffs filed a motion for an order requiring the defendants to comply with their law library plan. The state did not respond. On May 3, 1982 the court issued an order directing the defendants to show cause within ten days why the motion should not be granted. Fourteen days later the state responded in an answer that summarized their previous filings.
 The district court issued an order on May 7, 1982 directing the parties to submit within thirty days satisfactory alternatives to their previous proposals. The State did not respond. On September 3, the court held a hearing on the subject of the order at which point the defendants responded.
 After the final remand to the district court, on September 14, 1984, the plaintiffs filed motions for partial summary judgment and for an order compelling defendants to report on their obligation to provide inmates with legal facilities. Defendants did not respond.
 The district court subsequently ordered the state to submit within thirty days its plan to provide legal facilities to inmates in disciplinary segregation. Plaintiffs then successfully sought a motion to compel the defendants to show within 30 days that it was in compliance with its plan regarding training of inmate paralegals, free copying of legal materials, and the availability of prison law libraries. The defendants did not respond.
 Plaintiffs moved the Court on January 30, 1985 to issue judgment because the defendants had not demonstrated that they were in compliance with constitutional requirements. The defendants did not respond.
 The district court entered summary judgment against the defendants on May 14, 1985 because the Defendants had not demonstrated compliance.