**FEDERAL DEPOSIT INSURANCE CORPORATION, et al.**

v.

**Gerard A. HEIDRICK, Jr., et al.**

**Civ. No. HM–86–77.**

United States District Court,
D. Maryland.

Oct. 31, 1991.

Memorandum Jan. 31, 1992.

Paul E. Gutermann, Julia Reynolds Johnson, Monique Perez, Squire, Sanders & Dempsey, Washington, DC, and B. Irene Koerner, Office of Gen. Counsel, F.D.I.C., Washington, DC, for plaintiffs.

John R. Gerstein, Robert M. Pozin, Ross, Dixon & Masback, Washington, DC, for defendant American Cas. Co. of Reading, PA.

William M. Morstein, Ellicott City, MD, for defendant Gerard A. Heidrick, Jr.

Henry L. Conway, Jr., Thomas B. Conway, Baltimore, MD, for defendant Richard M. Smith.

James E. Gray, Thomas V. Monahan, Jr., Goodell, DeVries, Leech & Gray, Baltimore, MD, for defendants Edmund A. Chrzanowski, Francis A. Korwek, and Kendall White Abernathy.

## MEMORANDUM

HERBERT F. MURRAY, Senior District Judge.

By a Memorandum and Order dated January 25, 1991, (the "Order"), this Court denied the cross-motion of the defendant, American Casualty Company ("American Casualty"), for summary judgment, and granted the cross-motion of the plaintiff, Federal Savings and Loan Insurance Corporation ("FSLIC"),[1] for summary judgment. Presently before the Court is the motion for reconsideration, alteration or amendment of that Order filed by American Casualty. Upon careful consideration of the arguments presented by the parties, the Court will grant American Casualty's motion for reconsideration.

## I. FACTUAL SUMMARY

The Order set out in detail the facts and procedural history of this case up to that time. Therefore, only a summary is necessary here.

FSLIC insured the accounts at Fidelity Federal Savings and Loan Association ("Fidelity"), a mutual savings and loan association organized under the laws of the United States and chartered by the Federal Home Loan Bank Board ("FHLBB"). On January 7, 1983, FHLBB placed Fidelity under a conservatorship, and in August, 1984, FHLBB appointed FSLIC as sole receiver for Fidelity. FSLIC thereby succeeded to Fidelity's claims against its directors and officers.

MGIC Indemnity Corporation ("MGIC") insured the directors and officers of Fidelity. American Casualty subsequently bought that insurance contract ("the Policy") from MGIC. The instant case arose from attempts by FSLIC to hold American Casualty liable under the Policy for losses of Fidelity allegedly caused by the individual defendant directors and officers of Fidelity.

### A. Procedural History

In February, 1986, American Casualty filed a motion to dismiss, together with a motion to stay discovery. On May 27, 1988, a hearing on that motion was held and, by an order dated May 31, 1988, the Court directed that the motion to dismiss

---

1. The Federal Deposit Insurance Corporation ("FDIC") has substituted for the FSLIC in this case. Nevertheless, because relevant language of the insurance policy at issue specifically mentions FSLIC, the Court will refer to FSLIC interchangeably with FDIC.

would be treated as a motion for summary judgment. No explicit ruling was made on American Casualty's motion to stay discovery.

Soon afterward, FSLIC filed its own cross-motion for summary judgment, and the Court held a hearing on the cross-motions on September 23, 1988. From that date, through the issuance of the Order to the present, the parties have filed many supplementary briefs. The cross-motions for summary judgment focused on the two issues raised in American Casualty's original motion to dismiss; namely, whether American Casualty received valid notice of a claim under the terms of the Policy, and whether a portion of the Policy, Endorsement No. 2, exempts American Casualty from liability.

The papers filed by the parties treated these two issues at length, supplying pertinent evidence and much relevant precedent. Specifically, the defendant's briefs included two declarations offered as extrinsic evidence of the intent of the parties at the time of the adoption of Endorsement No. 2. However, because those declarations contained no relevant information based upon personal knowledge, the Court found them inadmissible. FSLIC offered no extrinsic evidence bearing on the interpretation of the endorsement.

In the Order, based upon a careful review of the many submissions, the Court granted the plaintiff's cross-motion for summary judgment and denied the defendants' cross-motion for summary judgment. With respect to the issue of notice, the Court found that the plaintiffs adequately alerted American Casualty within the notice period. Further, with respect to the issue of coverage under Endorsement No. 2, because the Court found that the language of the endorsement was ambiguous, and because the Court further found that neither party offered admissible extrinsic evidence bearing on the issue, the Court followed Maryland law and construed the endorsement against the party responsible for drafting it—American Casualty, by succession from MGIC. Having made those findings and determinations, the Court held

that the defendant received proper notice of a claim and that the endorsement was ambiguous and should be construed against the defendant.

In its present motion, American Casualty asks the Court to reconsider that Order. Alternatively, American Casualty asks that the Court deny FSLIC's cross-motion for summary judgment and allow American Casualty time for discovery of extrinsic evidence bearing on the intent of the parties with respect to Endorsement No. 2. Further, the defendant asks that the Court amend the Order to allow it to file an answer asserting previously unraised affirmative defenses to coverage. The Court now will address American Casualty's motions.

## II. MOTION FOR RECONSIDERATION

■ The moving party faces a substantial burden in connection with a motion for reconsideration of an Order of this Court. To merit reconsideration, a motion must be timely and premised on a meritorious defense, an absence of prejudice to the opposing party, and exceptional circumstances. *Smith v. Bounds*, 813 F.2d 1299 (4th Cir. 1987). Here, American Casualty filed its motion in a timely manner and the plaintiffs suffered no prejudice. Further, the Court finds that the occasion of a decision of the Maryland Court of Appeals directly on point in this case certainly qualifies as exceptional circumstances.

### A. *Intervening Maryland Precedent*

■ This Court must follow Maryland law when it interprets the Policy. Noting the absence of a "uniform judicial construction" of the language of Endorsement No. 2 and the lack of "clearly persuasive guidance ... from the cases cited by the parties when taken as a whole," Order at 14, this Court followed the direction of the Court in *Pacific Indemnity Co. v. Interstate Fire & Casualty Co.*, 302 Md. 383, 488 A.2d 486 (1985), and turned to the issue whether the language of the endorsement was ambiguous.

The Policy provides:

It is understood and agreed that the Insurer shall not be liable to make any payment for Loss *in connection with any claim* made against the Directors or

Officers *based upon or attributable to: any claim* or action or proceeding brought by [FHLBB] or [FSLIC].

Policy, Endorsement No. 2 (emphasis added). Reading the terms of the endorsement in the context of the Policy as a whole and as a reasonably prudent layperson, the Court found that such a person might conclude that the emphasized language could mean that the policy excluded either (1) every claim involving FHLBB or FSLIC, or (2) only those claims based upon claims brought by those regulatory agencies. Finding these divergent interpretations equally plausible, this Court declared the language of the endorsement ambiguous. Order at 17.

■ On August 16, 1991, the Maryland Court of Appeals decided the case of *Finci v. American Casualty Co.*, 323 Md. 358, 593 A.2d 1069 (1991). In that case, in construing an insurance contract, the Court of Appeals interpreted language nearly identical to that of Endorsement No. 2. The Court of Appeals held that "no ambiguity" arose from the use of the phrase "based upon or attributable to" in that contract. *Finci*, 323 Md. at 370, 593 A.2d 1069. In the words of the unanimous Court in that case, "The usage is simply a drafting style." *Id.* at 371, 593 A.2d 1069.

■ It is axiomatic that the federal courts must apply state law when confronted with issues within the scope of state regulatory powers, such as insurance law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Phoenix Sav. and Loan, Inc. v. Aetna Casualty & Sur. Co.*, 381 F.2d 245, 249 (4th Cir.1967), *on remand* 302 F.Supp. 832 (D.Md.1969), *rev'd on other grounds*, 427 F.2d 862 (4th Cir.1970). When issues have been decided by the highest court in the state, federal courts must apply those pronouncements without review. *Justice v. Prudential Ins. Co.*, 351 F.2d 462, 463 (4th Cir.1965).

In light of the holding of the Court in *Finci*, this Court will grant the defendant's motion for reconsideration of the Order. Further, the Court will deny the plaintiff's cross-motion for summary judgment on the issue of the interpretation of the endorsement, and will grant the defendant's cross-

motion for summary judgment on that same issue. Additionally, in light of this decision, the Court will mark as moot the defendant's motion for reasonable time within which to conduct discovery into the parties' interpretation of the endorsement.

## III.  NON–FSLIC PLAINTIFFS

Two subsidiaries of Fidelity, Howard International, Inc. and Development Funding/Highpointe, Inc., joined FSLIC as plaintiffs in this action. The defendant has not argued that the terms of the endorsement exclude the claims brought by those plaintiffs. However, in its motion for reconsideration, American Casualty offered two other arguments why the Court should reconsider the Order denying its cross-motion for summary judgment—that the Court failed to consider extrinsic evidence offered by American Casualty to show a dispute of material fact and that the Court overlooked recent case law on the issue of notice.

### A.  *Extrinsic Evidence*

■ American Casualty argues that the Court failed to consider the declarations of Dahlstrom and Pozin when executing the Order. The defendant claims that those declarations provide evidence of the construction of the endorsement by the parties and, as such, create a material issue of fact that precludes the granting of summary judgment in favor of the plaintiffs.

In the Order, this Court noted that both parties repeatedly stressed that interpretation of the endorsement did not require the Court to consider any extrinsic evidence. Order at 17–18. American Casualty now argues that, although extrinsic evidence indeed was not necessary, the Court should have weighed the extrinsic evidence offered by the defendant.

In substance, the Dahlstrom declaration states that Thomas Dahlstrom worked at MGIC and, until December, 1981, Dahlstrom was responsible for communicating with Fidelity in connection with the Policy, and that such responsibility shifted to Fred A. Bernstein, the Senior Underwriter for MGIC, in January, 1982. Further, the declaration makes clear that Endorsement No. 2 was added to the Policy after the account

was transferred to Bernstein. Finally, the declaration concludes that, upon his reading of it, Dahlstrom agrees with American Casualty as to the meaning of the endorsement. However, the declaration contains no indication that Fidelity or FSLIC held such a belief. As far as the Pozin declaration is concerned, it merely states that American Casualty has been unable to locate Bernstein.

Weighing the two declarations, this Court found that they contained no information based upon personal knowledge admissible at a trial on the issue of the construction of Endorsement No. 2. At most, the declarations state that American Casualty could not locate anyone who *could* make a statement from personal knowledge with respect to what the parties intended when they agreed to incorporate the endorsement into the policy. Although the Order never specifically refers to the declarations of Dahlstrom and Pozin, the Court stated that "no admissible extrinsic evidence tending to show the existence of a disputed factual issue has been proffered." Order at 18. This Court rejects the arguments of American Casualty to the contrary.

### B. *Notice*

Finally, American Casualty argues that the Court erred when it found that the defendant received adequate notice of a claim under the terms of the Policy. In support, the defendant offers *American Casualty Co. v. Wilkinson*, Civ. No. 89–1609–W, 1990 WL 302175 (W.D.Okla.1990), a case decided in another jurisdiction before the issuance of the Order.

■ In the Order, this Court considered the language of the Policy with respect to the issue of notice:

(A) If during the policy period the Association or the Directors or Officers shall: (i) receive written or oral notice from any party that it is the intention of such party to hold the Directors and Officers, or any of them, responsible for a Wrongful Act; or (ii) become aware of any occurrence which may subsequently give rise to a claim being made against the Directors and Officers, or any of them,

for a Wrongful Act; and shall, during such period, give written notice thereof to the insurer as soon as practicable and prior to the date of termination of the policy, then any claim which may subsequently be made against the Directors or Officers arising out of such Wrongful Act shall, for the purpose of this policy, be treated as a claim made during the policy year in which such notice was given.

(B) The Association or the Directors or Officers shall, as a condition precedent to their rights under this policy, give to the insurer notice in writing as soon as practicable of any claims made and shall give the insurer such information and cooperation as it may reasonably require.

Policy, § 6 (Notice of Claims); *see* Order at 10–11. The Court found that, within the policy period, MGIC received a letter from Richard S. Mattison, the conservator for Fidelity. That letter listed several occurrences, pursuant to § 6. American Casualty argued that such notice was insufficient and vague. Finding that the letter provided American Casualty with sufficient information to investigate the matter and to fix its reserves, the Court held that the defendant received adequate notice. Order at 13.

The Court in *Wilkinson* considered the issue of notice in the context of contractual language identical to the language quoted above. The Court in that case referred to letters purporting to give notice to American Casualty of claims against the directors and officers covered by the policy. The letters referred only to the potential claims of fifty entities, however, without giving any information about those claims. The Court in *Wilkinson* held that American Casualty received inadequate notice.

In the case at bar, Mattison's letter provided more than a mere "laundry list" of potential claimants—it listed claims of self-dealing, violations of regulations, fiduciary breaches, and negligence, all in connection with the construction of the Association's main office building and the authorizing, approving and administering of various loans and projects. *See* Order at 3. Therefore, to the extent that the Court in *Wil-*

*kinson* held only that notice was inadequate under the particular circumstances of that case, this Court considers the *Wilkinson* case distinguishable and unpersuasive.

However, the Court in *Wilkinson* may have held that the terms of § 6 require potential claimants to provide specific details of the circumstances surrounding each and every occurrence that may lead to liability in order to trigger coverage. To the extent that the Court in *Wilkinson* in fact intended such a holding, this Court refuses to follow it.

Acknowledging in the Order that Mattison's letter failed to provide a wealth of detail, this Court held that a potential claimant need not provide such detail in order to provide notice under § 6. The Policy refers to "notice from any party that it is the intention of such party to hold the [insureds] responsible for a Wrongful Act." Policy, § 6(A)(i). Asking only for notice of intent, that clause requires neither detail nor specificity. Further, the insureds have a duty to report "any occurrence which may subsequently give rise to a claim." Policy, § 6(A)(ii). In the Order, this Court noted the broad sweep of that clause, which also precludes the need for undue specificity.

It is not the holding of this Court that American Casualty has no right to require specific information relating to claims made under § 6. Indeed, § 6(B) requires the insureds themselves to provide such information and cooperation as the insurer should reasonably require in connection with claims after they are made. Section 6 enables the insurer to learn of potential claims "in writing as soon as practicable." Policy, § 6(B). This Court holds that the terms of § 6 fail to require potential claimants to act with undue specificity as well as deliberate speed.

Parenthetically and by way of illustration, this Court notes that its holding today on the issue of notice follows a policy enacted into law by the Maryland legislature:

> Where any insurer seeks to disclaim coverage on any policy of liability insurance issued by it, on the ground that the insured or anyone claiming the benefits of the policy through the insured has breached the policy by failing to cooperate with the insurer or by not giving requisite notice to the insurer, such disclaimer shall be effective only if the insurer establishes, by a preponderance of affirmative evidence that such lack of cooperation or notice has resulted in actual prejudice to the insurer.

Md.Ann.Code art. 48A, § 482 (1991). *See St. Paul Fire & Marine Ins. Co. v. House,* 315 Md. 328, 332, 554 A.2d 404 (1989) (the statute requires an insurer to satisfy the standard of actual prejudice before an alleged breach of a policy's notice provision would excuse the insurer from performance).

## IV. MOTIONS TO AMEND ORDER AND TO FILE ANSWER

■ American Casualty requests that the Court allow it to file an answer. In support of this motion, the defendant points out that the Order only disposed of the two issues raised in the defendant's original motion to dismiss, and never considered any other issues. The defendant further asserts that its motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure postponed its deadline for filing an answer, and that the treatment of that motion as a motion for summary judgment fails to alter such a postponement.

This Court agrees with American Casualty. The Order dealt exclusively with the issues of notice and the interpretation of the endorsement and failed even to consider any other issues. Additionally, this Court favors resolution of disputes on their merits rather than on procedural technicalities. Accordingly, the Court will allow the defendant to file an answer to the allegations of the remaining plaintiffs.

## V. MOTION FOR STAY OF PROCEEDINGS

As American Casualty points out accurately and repeatedly in its filings, this Court never has ruled on the defendant's motion for a stay of the proceedings, which American Casualty filed back in February, 1986. It is unclear whether, in its request

for reasonable time for discovery, American Casualty has withdrawn that motion. In any event, in light of its other holdings, the Court today will deny the motion for a stay of the proceedings.

## VI. CONCLUSION

Based upon the recent holding of the Maryland Court of Appeals in *Finci v. American Casualty Co.*, 323 Md. 358, 593 A.2d 1069 (1991), this Court will grant the defendant's motion for reconsideration and will deny the plaintiff's cross-motion for summary judgment on the issue of the interpretation of Endorsement No. 2. The Court also will grant the defendant's cross-motion for summary judgment on that issue. Accordingly, the Court will dismiss the complaint against American Casualty with respect to FSLIC.

With respect to the other named plaintiffs, however, the Court will deny the defendant's motion for reconsideration on the issues of notice and the consideration of extrinsic evidence. Therefore, those two plaintiffs remain in this case. Towards that end, the Court will grant the defendant's motion to amend the order and file an answer to the allegations relating to those two plaintiffs. Finally, although the Court will mark as moot the defendant's request for reasonable discovery into the issue of the parties' interpretation of Endorsement No. 2, discovery of course will be available to a limited extent as it relates to those issues remaining in the case.

In accordance with the foregoing, the Court will execute an Order on this date.

## MEMORANDUM

By an Order dated October 31, 1991, this Court (1) granted the motion of the defendant, American Casualty Co. of Reading, Pa. ("American Casualty"), for reconsideration of the Order dated January 25, 1991; (2) granted American Casualty's motion for summary judgment with respect to the FDIC; and (3) denied that motion for summary judgment with respect to the remaining two plaintiffs, Howard International, Inc. ("Howard") and Development Funding/Highpointe, Inc. ("Highpointe"). Presently before the Court is American Casualty's motion for reconsideration of the portion of the Order that denied its motion for summary judgment.

■ As this Court noted in its Order dated October 31, 1991, a moving party faces a substantial burden in connection with a motion for reconsideration of an Order of this Court. To merit reconsideration, a motion must be timely and premised on a meritorious defense, an absence of prejudice to the opposing party, and exceptional circumstances. *Smith v. Bounds*, 813 F.2d 1299 (4th Cir.1987). Filed shortly after the execution of the Order dated October 31, 1991, American Casualty's motion certainly satisfies the timeliness requirement. Further, this Court finds that the fact that Howard and Highpointe lack the capacity to maintain this action due to the forfeiture of their corporate charters in 1986, Reply dated January 6, 1992, Exh. A, B, certainly constitutes exceptional circumstances.

In the Order dated October 31, 1991, this Court denied the motion for summary judgment with respect to Howard and Highpointe because, in the Court's view, American Casualty had "not argued that the terms of the endorsement exclude the claims brought by those plaintiffs." Memorandum at 7. Indeed, the first serious arguments from American Casualty that Endorsement No. 2 applied specifically to the claims of Howard and Highpointe surfaced only in the present motion for reconsideration. Finding that those arguments present exceptional circumstances and a meritorious defense, this Court will grant American Casualty's motion for reconsideration.

■ Rule 17(b) of the Federal Rules of Civil Procedure provides that the law of the state of incorporation controls the capacity of a corporation to sue in federal court. *Chrysler Credit Corp. v. Superior Dodge, Inc.*, 538 F.2d 616, 617–18 (4th Cir. 1976). In this case, Maryland law clearly provides that a corporation whose charter has been forfeited has no legal existence, and thus no capacity to sue. Md. Corps. & Ass'ns Code Ann. § 3–515. Because the

Maryland Department of Assessments and Taxation has forfeited their charters, Howard and Highpointe have no capacity to maintain this lawsuit; consequently, this Court will grant the motion for summary judgment with respect to those plaintiffs.

This Court will execute an Order on this date in accordance with the foregoing Memorandum.