**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

THOMAS ROBINSON,
            *Plaintiff-Appellant,*

v.

WIX FILTRATION CORPORATION LLC;
DANA-SPICER, INCORPORATED, d/b/a
Wix Filtration Products Division;
AFFINIA GROUP, INCORPORATED,
d/b/a Wix Filtration Products
Division,
            *Defendants-Appellees.*

No. 09-1167

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Martin K. Reidinger, District Judge.
(3:07-cv-00414-MR-CH)

Argued: December 3, 2009

Decided: March 26, 2010

Before KING, DUNCAN, and DAVIS, Circuit Judges.

---

Affirmed by published opinion. Judge Duncan wrote the majority opinion, in which Judge Davis joined. Judge Davis wrote a separate concurring opinion. Judge King wrote a dissenting opinion.

---

**COUNSEL**

Charles A. Everage, Charlotte, North Carolina, for Appellant.
Jeffrey D. Keister, MCANGUS, GOUDELOCK & COURIE,
LLC, Charlotte, North Carolina, for Appellees.

---

**OPINION**

DUNCAN, Circuit Judge:

Thomas Robinson ("Appellant") appeals the denial of his post-judgment motions seeking relief from the district court's entry of summary judgment against him. Appellant had moved for relief from the judgment pursuant to Federal Rule of Civil Procedure 60(b), or, in the alternative, to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e). The district court construed Appellant's motion as one solely seeking relief pursuant to Rule 59(e), rather than one also seeking relief under Rule 60(b), and determined that altering or amending the judgment was not necessary to prevent manifest injustice in this case. Appellant argues that the district court erred in its analysis by failing to consider his motion pursuant to Rule 60(b), and that it erred in denying the motion pursuant to Rule 59(e). For the reasons that follow, we affirm.

I.

On August 29, 2007, Appellant filed a two-count civil action against his former employer, Wix Filtration Corporation LLC, and related corporate entities, Dana-Spicer, Inc. d/b/a Wix Filtration Products Division, and Affinia Group, Inc. d/b/a Wix Filtration Products Division (collectively, "Appellees"), in the North Carolina Superior Court, alleging wrongful termination in violation of North Carolina public policy, and retaliation in violation of the Fair Labor Standards

Act, 29 U.S.C. § 215(a)(3). On October 1, 2007, Appellees removed the case to the Western District of North Carolina.

Shortly thereafter, on December 18, 2007, a magistrate judge, acting pursuant to Federal Rule of Civil Procedure 16 and the Local Rules of the Western District of North Carolina, issued a pretrial order and case management plan. In that order, the magistrate judge set August 8, 2008, as the deadline to file all dispositive motions. Appellant acknowledges receiving that order. In compliance with the order, on August 8, 2008, Appellees filed a motion for summary judgment. Appellant, however, never filed a response, and on December 3, 2008, after reviewing the entire record in this case, the district court granted Appellees' motion.

On December 12, 2008, Appellant filed a motion for relief from the judgment pursuant to Federal Rule of Civil Procedure 60, or in the alternative, to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59, asserting the same two grounds for each rule. First, Appellant claimed that although his counsel utilizes the court's Case Management/Electronic Case Filing ("CM/ECF") system, which generates a Notice of Electronic Filing ("NEF") whenever a document is filed,[1] his counsel never received electronic notice of Appellees' motion for summary judgment because

---

[1]CM/ECF is a comprehensive case management system that allows courts to maintain electronic case files and offer electronic filing over the Internet. Whenever a document is filed, the CM/ECF system automatically generates a NEF. The NEF is an e-mail message containing a link to the filed document to registered attorneys involved with the case. The link allows e-mail recipients to access the electronically filed document once free of charge. The link expires after fifteen days, after which attorneys can still access the document for a fee. Thus, litigants receive one free copy of documents filed electronically in their cases, which they can save or print for their files. Additional copies are available to attorneys and the general public for viewing or downloading at eight cents per page. *See generally* Jessica Belskis, *Electronic Case Filing: Is Failure to Check Email Related to an Electronically Filed Case Malpractice?*, 2 Shidler J. L. Com. & Tech. 13 (2005).

counsel's computer system experienced several problems during the summer months of 2008 that caused him not to receive various e-mails.[2] Appellant explained that his counsel's computer was afflicted by a malware virus and that his counsel's firm's domain name had temporarily expired when the motion for summary judgment was filed.[3] In light of these computer problems, Appellant urged the district court to relieve him from the judgment, or in the alternative, to alter or amend the judgment.[4] Second, Appellant claimed that there are genuine issues of material fact which should preclude the granting of summary judgment, and thus, he argued that the judgment should not stand.

On January 13, 2009, the district court denied Appellant's motion. The court construed the motion as one seeking relief pursuant to Rule 59(e) exclusively, and gave no consideration to Rule 60(b).[5] After noting that nothing in the CM/ECF sys-

---

[2]He also alleged that Appellees had not served the motion for summary judgment by mail or other means "as is the general practice of other attorneys in the Western District of North Carolina." J.A. 100. We note that the Local Rules for the Western District of North Carolina require "[a]ll documents submitted for filing in this district [to] be filed electronically unless expressly exempted from electronic filing either by the Administrative Procedures or by the assigned judge." W.D.N.C. R. 5.2.1(B).

[3]The expired domain name apparently caused Appellant's attorney and his firm to be temporarily disabled from utilizing the firm's e-mail. Even after the e-mail domain name was re-registered, the e-mail accounts associated with the domain name were "blacklisted" causing further e-mail problems.

[4]At oral argument, Appellant's counsel explained that he made the affirmative decision not to contact opposing counsel after the deadline for filing dispositive motions had passed because he did not want to remind them of the deadline for filing dispositive motions.

[5]In that order, the district court made the following findings: (1) "Plaintiff's counsel knew by virtue of the entry of the Pretrial Order and Case Management Plan on December 18, 2007 that there was a motions deadline of August 8, 2008 in this case"; (2) "Plaintiff's counsel reasonably should have anticipated some type of dispositive motion might be filed as of that date"; (3) "Plaintiff's counsel also knew at the time of the motions

tem indicated that Appellant failed to receive notice of Appellees' electronic filing, the court denied the motion on Rule 59(e) grounds, finding that the "computer problems did not relieve Plaintiff's counsel of his obligation to continue to monitor the docket in this case," J.A. 183, and that "altering or amending the Judgment is not necessary to prevent manifest injustice," *id.* at 185. This appeal followed.

## II.

On appeal, Appellant challenges the denial of his motion for relief from the judgment pursuant to Rule 60(b), or in the alternative, to alter or amend the judgment pursuant to Rule 59(e). His argument is twofold. First, he asserts that the district court erred in denying the motion pursuant to Rule 59(e). Second, he argues that the district court erred in failing to analyze his motion under Rule 60(b). We address each contention below.

## A.

We first consider whether the district court erred in denying Appellant's motion pursuant to Rule 59(e). This court reviews the denial of a Rule 59(e) motion under the deferential abuse of discretion standard. *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 197 (4th Cir. 2006). Rule 59(e) provides that a court may alter or amend the judgment if the movant shows

---

deadline that he and other members of his firm were experiencing problems receiving . . . emails" (4); "Plaintiff's counsel apparently failed to check the Court's docket to see if any activity occurred during this time period for which he had not received email notification"; (5) "Plaintiff's counsel also apparently failed to check with opposing counsel to see if any filings had been made during this time"; (6) had counsel checked the docket or contacted opposing counsel or the court, "counsel would have learned that a dispositive motion had been filed"; and (7) there was no evidence "of an error in the docketing of the Defendants' Motion in the Court's ECF system." J.A. 184-85.

either (1) an intervening change in the controlling law, (2) new evidence that was not available at trial, or (3) that there has been a clear error of law or a manifest injustice.[6] *Id.* Appellant only argues that there has been a manifest injustice, and thus, we need not consider the other two prongs of this rule.

Appellant argues that his counsel's computer problems prevented him from presenting his meritorious opposition to the Appellees' motion, thereby creating a manifest injustice. He insists that without this response, the district court was left without the kind of accurate and full record necessary for adjudication of his claim, and that it would be a manifest injustice to allow "'a ruling based on an erroneous and inadequate record to stand.'" Appellant's Br. at 18 (quoting *EEOC v. Lockheed Martin Corp., Aero & Naval Sys.*, 116 F.3d 110, 112 (4th Cir. 1997)). He thus contends that the district court abused its discretion in denying his motion. We disagree.

We can hardly say that the district court abused its discretion in declining to vacate its judgment to prevent "manifest injustice" given that Appellant's failure to receive notice of the motion resulted from his counsel's conscious choice not to take any action with respect to his computer troubles. As the district court found, because a pretrial order was entered on December 18, 2007, establishing August 8, 2008, as the deadline for filing dispositive motions, Appellant's counsel knew full well that the deadline for dispositive motions was pending. *See* J.A. 184. Also, "Plaintiff's counsel . . . knew . . . that he and other members of his firm were experiencing problems receiving . . . emails," J.A. 184, and that, pursuant

---

[6]We recognize that on December 1, 2009, the Federal Rules of Civil Procedure were amended. As a general rule, the Supreme Court has advised that amendments to the Federal Rules should not apply retroactively. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 275 n.29 (1994). We therefore apply the pre-December 1, 2009, version of the Federal Rules.

to the local rules of practice and procedure, any notice of docket activity would arrive through e-mail, *see* W.D.N.C. R. 5.2.1(B) (requiring that "[a]ll documents submitted for filing . . . be filed electronically unless expressly exempted from electronic filing either by the Administrative Procedures or by the assigned judge"). Finally, neither the district court nor Appellees had reason to know about Appellant's counsel's computer troubles. *See* J.A. 179-80 ("There is nothing in the ECF system to indicate that the transmission of the[ ] NEF's to the Plaintiff's counsel was not successful."). Despite all of this, Appellant's counsel deliberately chose not to contact anyone. *See* J.A. 184.

Only Appellant's counsel was in a position to protect Appellant from precisely what occurred here; neither the district court nor Appellees had reason to know that Appellant had not received notice of the motion, especially since nothing in the CM/ECF system indicated that Appellant failed to receive the filing. *See* W.D.N.C. R. 5.3(A) (recognizing that "[i]ssuance of the . . . NEF . . . constitutes proof of service of the filed document upon all registered users"); *see also* J.A. 179, 185 (noting that "[a] NEF generated by the Court's ECF system indicates that notice of each of these documents was electronically mailed to Plaintiff's counsel on August 8, 2008," and finding that there is a "lack of any evidence of an error in the docketing of the Defendants' Motion in the Court's ECF system"). Knowing that dispositive motions were due on August 8, 2008, Appellant's counsel had good reason, after realizing he was experiencing computer problems, to check the court's docket after such date or contact the court and opposing counsel to notify them of his computer troubles. Had Appellant's counsel done either of these two things, he would have discovered the motion for summary judgment before judgment was entered.[7] *See Fox v. Am. Air-*

---

[7]We do not, as the dissent suggests, impose upon lawyers a duty to monitor court dockets. Instead, as the concurring opinion recognizes, we

*lines*, 389 F.3d 1291, 1296 (D.C. Cir. 2004) (affirming the district court's decision not to grant a Rule 59(e) motion since "the dismissal of the[ ] suit might have been avoided through the exercise of due diligence"); *see also* J.A. 184-85 ("Had counsel done either of these things at any point in the nearly four months between the time that the Motion for Summary Judgment was filed and the Court entered its Order, counsel would have learned that a dispositive motion had been filed, and he could have taken steps to respond to the motion in a proper fashion."). Instead, Appellant's counsel strategically chose not to call opposing counsel after the deadline for filing dispositive motions had passed because he did not want to alert them to the court's deadline. More amazingly, he chose not to check with the district court either. In other words, Appellant's counsel made the affirmative decision to remain in the dark.

---

merely acknowledge the existence of circumstances in which "lawyers have an obligation to their clients, to the profession, and to the court to pay attention." Concurring Op. at 18. Computer inaccessibility of which only counsel is aware, in a district requiring electronic filing, and during a time frame in which counsel is aware that dispositive motions are due, is certainly such a circumstance. The Model Rules of Professional Conduct promulgated by the American Bar Association support our view that Appellant's counsel had an obligation to his client to be attentive toward the litigation. Rule 1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." Model Rules of Prof'l Conduct R. 1.3. *See also* N.C. Rules of Prof'l Conduct R. 1.3 & cmt. 3 (adopting the Model Rule and noting that "[p]erhaps no professional shortcoming is more widely resented than procrastination" given that "[a] client's interests often can be adversely affected by the passage of time or the change of conditions"). Similarly, Rule 1.4(a)(4) requires lawyers to "keep the[ir] client[s] reasonably informed about the status of the[ir] matter[s]." Model Rules of Prof'l Conduct R. 1.4(a)(4). *See also* N.C. Rules of Prof'l Conduct R. 1.4 cmt. 3 (adopting the Model Rule and noting that "the lawyer [is required to] keep the client reasonably informed about the status of the matter, such as significant developments affecting the timing or the substance of the representation").

This strategic decision, along with Appellant's counsel's inaction, supports the district court's implicit conclusion that Appellant's counsel opted to engage in willful blindness. *See* J.A. 184-85. The consequences stemming from this choice, however, cannot be classified as manifestly unjust towards Appellant.[8] As both the Supreme Court and our circuit have consistently recognized, a party voluntarily chooses his attorney as his representative in the action, and, thus, he cannot later "avoid the consequences of the acts or omissions of this freely selected agent." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962) (finding that the district court did not abuse its discretion in dismissing a case, where the petitioner's counsel failed to appear at a duly scheduled pretrial conference and had been deliberately proceeding in dilatory fashion); *Universal Film Exchs., Inc. v. Lust*, 479 F.2d 573, 577 (4th Cir. 1973); *see also Gayle v. United Parcel Serv., Inc.*, 401 F.3d 222, 226-27 (4th Cir. 2005) (finding "that attorney negligence — including allowing a client's case to fall through the cracks — is [not] . . . an 'extraordinary circumstance'" justifying equitable tolling"). Rather, "a civil plaintiff may be deprived of his claim if he failed to see to it that his lawyer acted with dispatch in the prosecution of his lawsuit." *Link*, 370 U.S. at 634 n.10.

---

[8]The dissent argues that the district court abused its discretion in denying Appellant's Rule 59(e) motion particularly since "the summary judgment award was premised on the facts being deemed 'undisputed' solely because Robinson did not respond to the summary judgment motion." Dissenting Op. at 30. Yet, we have previously held that, in considering a motion for summary judgment, the district court "*must* review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993) (emphasis added). "Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion," the district court must still proceed with the facts it has before it and determine whether the moving party is entitled to judgment as a matter of law based on those uncontroverted facts. *Id.* The district court here did exactly as *Custer* requires: it carefully considered the record before it, and from that record, it determined that Appellees were entitled to judgment as a matter of law. We cannot fault the district court for acting as our precedent requires.

Accordingly, because Appellant's counsel was willfully blind to whether the opposing side had filed a dispositive motion, *see* J.A. 184-85, we cannot say that the district court abused its discretion in declining to vacate its judgment to prevent "manifest injustice."[9] Importantly, in doing so we do

---

[9]The dissent suggests that Appellant, in his opening brief, argued that the district court abused its discretion when it failed to consider in its Rule 59(e) manifest injustice analysis whether Appellant had a meritorious opposition to Appellees' motion for summary judgment. The dissent is simply inaccurate. Section I of the opening brief is entitled, "The Trial Court Abused Its Discretion in Failing to Consider Appellant's Post-Judgment Motion Pursuant to *Rule 60(b) Analysis*," and goes on to argue, at length, that *Dove v. CODESCO*, 569 F.2d 807 (4th Cir. 1978), required the district court to consider only Appellant's Rule 59(e) arguments and did not allow the court to "examine Appellant's Rule 60(b) arguments," primarily that "Appellant had a meritorious defense." Appellant's Br. at 14 (emphasis added). Thus, in that Section, Appellant urges this court to overturn *CODESCO*. Nowhere in that Section does Appellant suggest that the district court should have considered Appellant's meritorious opposition in its Rule 59(e) analysis. On the contrary, Appellant *concedes* that *CODESCO* barred the district court from considering his meritorious opposition. *See* Appellant's Br. at 17 ("The prejudicial effect of the *CODESCO* rule in this instant case was that it prevented the District Court from considering and making findings of whether . . . a meritorious defense existed to justify the vacation of the challenged order."). Similarly, in Section II, Appellant argues that his counsel's computer problems prevented him from presenting his meritorious opposition to the Appellees' motion, thereby creating a manifest injustice, not that the district court should have considered his meritorious opposition in its Rule 59(e) analysis. Finally, in Section III, Appellant contends that the district court should have considered his *Rule 60(b) arguments* and laments that "the District Court[,] . . .[by] apply[ing] a Rule 59(e) analysis," could not "consider the prerequisite issue of meritorious defense" found in Rule 60(b). Appellant's Br. at 26. Nowhere in his brief does Appellant propound and *legally support* the argument that the district court should have considered his meritorious opposition in its Rule 59(e) analysis. *See* Fed. R. App. P. 28(a)(9)(A) (requiring the argument to contain "appellant's contentions and the reasons for them, with citations to the authorities . . . on which the appellant relies").

It was at oral argument that Appellant suggested, for the first time, that the district court abused its discretion when it failed to consider in its Rule 59(e) manifest injustice analysis whether Appellant had a meritorious opposition. It is the practice of this court, however, subject to certain exceptions not applicable here, not to consider contentions that the parties have not raised in the briefs, but instead have made for the first time

not, as our good colleague in dissent suggests, sponsor and

---

at oral argument. *See Goad v. Celotex Corp.*, 831 F.2d 508, 512 n.12 (4th Cir. 1987) (declining to consider a point because it was not raised in the briefs); *see also United States v. Williams*, 2 F. App'x 284, 288-89 (4th Cir. 2001) (same). Nevertheless, because the dissent finds this argument dispositive, we address it here.

We do not believe that the district court abused its discretion in failing to consider whether the Appellant had a meritorious opposition. We have previously held that Rule 60(b) requires courts to consider whether the movant has a meritorious defense. *Dowell v. State Farm Fire and Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993); *Smith v. Bounds*, 813 F.2d 1299, 1304 (4th Cir. 1987); *Compton v. Alton S.S. Co., Inc.*, 608 F.2d 96, 102 (4th Cir. 1979), *aff'd en banc*, 841 F.2d 77 (4th Cir. 1988) (per curiam). This requirement has never before been extended to Rule 59(e) motions. Thus, we would be hard pressed to say that the district court abused its discretion in failing to apply a factor that has not been "judicially recognized." *James v. Jacobson*, 6 F.3d 233, 242 (4th Cir. 1993).

More importantly, requiring a district court to consider a meritorious opposition in its manifest injustice analysis would invert the Rule 59(e) process. As *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007), provides, *before* considering new evidence or arguments that were not presented before judgment — or, as in this case, a meritorious opposition — the court must *first* determine whether the movant's reasons for not providing such evidence or arguments are justified. *Zinkand* presupposes as a threshold matter the determination that the reasons for noncompliance are compelling. *Id.* at 637 ("If the court elects to look at additional evidence represented as having been unavailable at the prior hearing, the court must satisfy itself as to the unavailability of the evidence and likewise examine the justification for its omission."). Any other interpretation of *Zinkand* proves illogical. If courts were required to consider a party's meritorious opposition before granting a Rule 59(e) motion, courts would inevitably consider motions for summary judgment twice: both before and after granting a Rule 59(e) motion. This requirement proves contrary to our longstanding tradition "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Even under Rule 60(b), before considering whether the party has a meritorious opposition, a court may first determine whether excusable neglect prevented the party from filing in the first instance. *See Dowell*, 993 F.2d at 48.

Finally, we are concerned that such an approach would discourage compliance with the Federal Rules. There would be no incentive for a party ever to respond to a motion for summary judgment, because if he lost, he would always have a second bite at the apple through a Rule 59(e) motion.

apply a general duty to monitor dockets. Rather, we conclude that counsel cannot make the calculated choice to take no action with respect to his electronic inaccessibility — by neither informing the court or the parties, nor by simply ascertaining from the court as to whether dispositive motions were filed when due — and then avail himself of discretionary relief from the consequences of that choice.

## B.

We next consider whether it was error for the district court to construe Appellant's motion as one seeking relief pursuant to Rule 59(e) exclusively, rather than one also seeking relief under Rule 60(b).[10] The Federal Rules of Civil Procedure allow a litigant subject to an adverse judgment to file either a motion to alter or amend the judgment pursuant to Rule 59(e) or a motion seeking relief from the judgment pursuant to Rule 60(b). Although the two rules appear similar, they are in fact quite distinct. A Rule 59(e) motion is discretionary. It need not be granted unless the district court finds that there has been an intervening change of controlling law, that new evidence has become available, or that there is a need to correct a clear error or prevent manifest injustice. *Ingle*, 439 F.3d at 197. By contrast, Rule 60(b) provides that a court may relieve a party from an adverse judgment if the party shows either:

> (1) mistake, inadvertence, surprise, or excusable neglect;

---

[10]In his "Motion for Relief from Judgment and to Alter and Amend Judgment," Appellant only mentioned Rule 60(b) in the opening sentence but never addressed the elements of this rule. J.A. 100. We have previously made it clear that the failure to present an argument to the district court constitutes waiver before this court. *United States v. Evans*, 404 F.3d 227, 236 n.5 (4th Cir. 2005). Nevertheless, because the district court appears to have understood the Rule 60(b) argument as properly raised, we will entertain it here.

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or dis-charged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Appellant argues that because his motion invokes both Rule 59(e) and Rule 60(b), the district court erred by considering only Rule 59(e) and ignoring Rule 60(b).[11] We have squarely

---

[11]In reaching this result, the district court relied on *CODESCO*. 569 F.2d at 809. In *CODESCO*, we held that "if a post-judgment motion is filed within ten days of the entry of judgment and calls into question the correctness of that judgment it should be treated as a motion under Rule 59(e), however it may be formally styled." *Id.* at 809. We developed that approach because, at the time, Rule 59(e) tolled the 30-day appeal period imposed by Federal Rule of Appellate Procedure 4(a) and Rule 60(b) did not. *Id.* We reasoned that such a rule was necessary to remain "consistent with the functional approach to procedure taken by the draftsmen of the federal rules." *Id.*

In 1993, however, Federal Rule of Appellate Procedure 4(a) was amended. It now reads:

If a party timely files in the district court any of the following motions under the Federal Rules of Civil Procedure, the time to file an appeal runs for all parties from the entry of the order dis-posing of the last such remaining motion:

held, however, that a motion filed under both Rule 59(e) and Rule 60(b) should be analyzed only under Rule 59(e) if it was filed no later than 10 days after entry of the adverse judgment and seeks to correct that judgment. *Small v. Hunt*, 98 F.3d 789, 797 (4th Cir. 1996); *see also Vaughan v. Murray*, No. 95-6081, 1995 WL 649864, at *3 n.3 (4th Cir. Nov. 6, 1995). Appellant's motion was filed 9 days after entry of judgment and indeed sought to correct that judgment. Therefore, we find no error in the district court's decision.

---

\* \* \*

(iv) to alter or amend the judgment under Rule 59; [or]

\* \* \*

(vi) for relief under Rule 60 if the motion is filed no later than 10 days after the judgment is entered.

Fed. R. App. P. 4(a)(4)(A). The 1993 amendment notes to Rule 4(a) explain that Rule 4(a) was amended to eliminate "the difficulty of determining whether a posttrial motion made within 10 days after entry of a judgment is a Rule 59(e) motion, which tolls the time for filing an appeal, or a Rule 60 motion, which historically has not tolled the time." Fed. R. App. P. 4(a)(4) Advisory Committee's note (1993 amendments). The notes further explain that the amendment "comports with the practice in several circuits of treating all motions to alter or amend judgments that are made within 10 days after entry of judgment as Rule 59(e) motions for purposes of Rule 4(a)(4)." *Id.*

Appellant argues that in light of Rule 4(a)'s new language, the district court erred by relying on *CODESCO*. We disagree. We recognize that under the new language of Rule 4(a), "a motion filed within ten days of the original judgment need not be considered a Rule 59 motion in order to preserve appellate review of the underlying order." *MLC Auto., LLC v. Town of Southern Pines*, 532 F.3d 269, 278 (4th Cir. 2008). As such, the rule established by *CODESCO* is no longer necessary. Yet, as we held in *MLC Automotive*, because this court has continued to cite and apply *CODESCO* following the amendment to Federal Rule of Appellate Procedure 4, *see, e.g.*, *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 573 n.2 (4th Cir. 2004), *CODESCO* remains binding precedent, *MLC Auto.*, 532 F.3d at 278.

Regardless, we do not believe that analyzing the motion under Rule 60(b) would have helped Appellant. In order to obtain relief under Rule 60(b), the moving party must demonstrate at least one of the six grounds for relief listed in Rule 60(b).[12] *Werner v. Carbo*, 731 F.2d 204, 207 (4th Cir. 1984). Here, Appellant sought relief from the judgment under Rule 60(b)(1) for "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). He argued that the e-mail difficulties experienced by his counsel between July 2008 and September 2008 excused his counsel's failure to respond to the motion for summary judgment. We find this argument unpersuasive.

A party that fails to act with diligence will be unable to establish that his conduct constituted excusable neglect pursuant to Rule 60(b)(1). *State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 177 (2d Cir. 2004) (citing 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2858, at 288-89 (2d ed. 1995)); *see also In re A.H. Robins Co., Inc.*, No. 98-1893, 1998 WL 904717, at *2 (4th Cir. Dec. 29, 1998) (finding that party's failure to inform the court of her new address did not constitute excusable neglect for purposes of Rule 60(b)). This court has held that "a lawyer's ignorance or carelessness do not present cognizable grounds for relief under [Rule] 60(b)." *Evans v. United Life & Accident Ins. Co.*, 871 F.2d 466, 472 (4th Cir. 1989).

In this case, Appellant's counsel was aware that he was experiencing e-mail difficulties during the summer months and that the dispositive motions' deadline was fast approaching. As such, to keep his client reasonably informed as to the

---

[12]In addition, the moving party must make a threshold showing that (1) its motion was timely made; (2) it had a meritorious defense; (3) no unfair prejudice to the opposing party would result; and (4) exceptional circumstances warranted relief from the judgment. *Dowell*, 993 F.2d at 48. We need not address whether the movant satisfied the four threshold requirements, however, if we find that the movant has not sufficiently satisfied one of the Rule 60(b) grounds for relief. *Id.*

status of the litigation, he should have regularly accessed the court's docket to monitor case activity, notified the court and opposing counsel of his computer problems, or found another way to stay informed regarding any developments in the case — particularly since the local rules required electronic filing. *See, e.g.*, *Gibson-Michaels v. Bair*, 255 F.R.D. 306, 307 (D.C. Cir. 2009) (finding that failure to receive notice of filing did not absolve counsel of his "affirmative duty to stay apprised of the status of the case"); *Soliman v. Johanns*, 412 F.3d 920, 922 (8th Cir. 2005) (finding that "a litigant who invokes the processes of the federal courts is responsible for maintaining communication with the court during the pendency of his lawsuit"); *Easley v. Kirmsee*, 382 F.3d 693, 698 (7th Cir. 2004) (noting that "attorney inattentiveness to litigation is not excusable, no matter what the resulting consequences the attorney's somnolent behavior may have on a litigant"); *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 357 (5th Cir. 1993) (finding that "[a] party has a duty of diligence to inquire about the status of a case"). Appellant's counsel, however, never accessed the court's docket after August 8, 2008, nor did he contact opposing counsel or the court to notify them of his computer problems, even though only he was in a position to protect Appellant from precisely what occurred here. Thus, the cause for the entry of judgment was Appellant's counsel's carelessness, not his alleged e-mail difficulties, and as noted above, attorney inattentiveness toward the pending litigation is not excusable under Rule 60(b). We therefore find that Appellant would not have received relief under Rule 60(b) because his counsel's calculated decision — to inform no one of computer malfunctions of which only he was aware, and to deliberately refrain from any attempt to ascertain whether summary judgment motions were filed on the date he knew they were due — in light of local rules requiring electronic filing, cannot be characterized as "excusable neglect." *See, e.g.*, *Zimmer St. Louis, Inc. v. Zimmer Co.*, 32 F.3d 357, 361 (8th Cir. 1994) (concluding in the Rule 60(b) context that failure to receive notice of final judgment

did not warrant relief, absent evidence that the official docket failed to reflect entry of final judgment).

### III.

For the reasons set forth above, the district court's order denying Appellant's motion for relief from the judgment, or in the alternative, to alter or amend the judgment is

*AFFIRMED*.

DAVIS, Circuit Judge, concurring:

I join the majority opinion in full. Our good colleague in dissent laments the possible consequences to an "innocent" litigant from his counsel's unwise and misplaced *strategic* choice to litigate, ostrich-like, with his head in the sand.[1] But as the majority opinion fully explains, the agency theory of

---

[1]At oral argument, the panel questioned counsel vigorously as to how counsel could have taken no action to inform himself of the status of the case for several months after his computer problems had been remedied and the deadline for dispositive motions had passed. Counsel assured the court that the case was not neglected, that his office has "procedures in place" to monitor cases, and that he "specifically recalled" discussing this case with "staff" in his office, apparently not long after the office computers were returned in early August (shortly after the deadline for the filing of dispositive motions). Here was counsel's candid but surprising explanation as to why, despite knowledge that during the computer malfunction the motion deadline had come and gone, he did nothing:

> I was aware that the deadline had passed. I made the strategic decision not to contact defense counsel . . . . In hindsight that wasn't the best decision but I thought it would be contrary to my client's position to pick up the phone to call opposing counsel to alert them that he [sic] may have neglected to file a motion within the time period for filing [for] summary judgment.

Counsel further explained that "routine" monthly checking of the CM/ECF system simply was not a part of his practice. But a computer malfunction necessitating a virtual shut-down of a law office for four days can hardly be described as "routine."

legal representation is long established. The majority opinion does no more than make explicit that which common sense and mature judgment make plain: lawyers have an obligation to their clients, to the profession, and to the court to pay attention. For practitioners in the legal profession, unlike those in some others, he who fails to pay attention may one day have to pay up.

If it is true that a little knowledge is a dangerous thing,[2] it is equally true that a little *local* knowledge is invaluable. As the dissent intimates, there are districts, divisions, and cities and counties in this circuit in which what happened in this case would be highly unlikely to happen. That is to say, in some places, lawyers talk to each other frequently, even lawyers on opposing sides of disputes. They discuss, for example, in advance, proposed or expected motions and other litigation events; they stay in contact with each other during the pendency of the case. Likewise, in some places, a district judge's staff or a magistrate judge's staff can be counted on to telephone a lawyer who has failed to file an opposition to a long-pending dispositive motion before the court rules on such a motion; in some other places, no such call can or should be expected from a chambers staff. In some places, a lawyer (with or without the client's assent) might herself call an adversary to inquire as to the lack of an opposition to a dispositive motion. But none of these things are required or expected in any district or any court; local legal culture drives these practices.

---

[2]"A little learning is a dangerous thing; drink deep, or taste not the Pierian spring: there shallow draughts intoxicate the brain, and drinking largely sobers us again." Alexander Pope, *An Essay on Criticism*, 1709. *But see* Thomas Henry Huxley, *On Elementary Instruction in Physiology* (1877) ("The saying that a little knowledge is a dangerous thing is, to my mind, a very dangerous adage. If knowledge is real and genuine, I do not believe that it is other than a very valuable possession, however infinitesimal its quantity may be. Indeed, if a little knowledge is dangerous, where is the man who has so much as to be out of danger?").

Thus, local knowledge, local practices, and local courtesies come in many varieties and arise from many sources.[3] In any event, this court's responsibility is to announce principled

---

[3]Our dissenting colleague makes much of the fact that the district court "rescheduled" the trial of the case by (electronic) notice entered approximately one month after the summary judgment deadline:

> [T]he Order of Denial apparently misapprehended the role of the district court in sustaining the erroneous impression that no dispositive motions had been filed. By rescheduling the trial after the deadline for Robinson's summary judgment response had passed, the court may have created the impression that the matter was progressing apace to trial, when in fact Robinson was overdue in his response.

Dissenting Op. at 31 n.11. Apart from the soundness of the inference drawn by the dissent, there may be more to the story than appears.

The Case Management Order entered in this case stated the following at p. 16:

> TRIAL DATE: Trial is scheduled to commence WITH a jury during the first civil trial term beginning on or after DECEMBER 15, 2008. The Court will endeavor to set the date of the term of court in which this case will tried at least eight months in advance. The term "Trial Date" has been used throughout this Order to refer to the first day of the term in which this case is ultimately set for trial, that also being the date on which jury selection is scheduled to begin for this case.

I do not claim any special insight into the court's practices in the Western District of North Carolina; local knowledge counts. Nevertheless, a plausible reading of the trial setting provision in the Case Management Order is that, as its plain language states, "the ultimate" trial date was to be set for "the first civil trial term beginning on or after DECEMBER 15, 2008." That seems to have been what the district court did in setting the trial for early February 2009.

At all events, many litigators will attest that when a district court reschedules a trial to a later date after the motions deadline, *it is to give the court more time to consider a dispositive motion*. Thus, contrary to the inference entertained by the dissent, the setting of the trial date in this case is in reality an additional reason counsel for Robinson should have taken a few moments in September 2008 to check the docket to learn what was going on in the case.

decisions based on legally supported rules of general applica-
tion. The majority opinion does that here and I join it fully.

KING, Circuit Judge, dissenting:

   More than twenty years ago, our distinguished then-Chief
Judge, Harrison L. Winter, wrote forcefully about judgments
that result from the failings of counsel. In his compelling
opinion in *Smith v. Bounds*, Judge Winter explained suc-
cinctly that

> [a] sound discretion hardly comprehends a pointless
> exaction of retribution. Dismissals for misconduct
> attributable to lawyers and in no way to their clients
> invariably penalize the innocent and may let the
> guilty off scott-free. Moreover, public confidence in
> the legal system is undermined when a litigant's
> claim is dismissed due to the blameworthy actions of
> their counsel. The litigant does have recourse in such
> a case — a malpractice action — but that approach
> may not result in a hearing on the merits of the plain-
> tiff's case.

813 F.2d 1299, 1304 (4th Cir. 1987) (citations, internal quota-
tion marks, and alteration omitted).

   Another of this Court's great judges, the inestimable Don-
ald S. Russell, had written eight years earlier — in language
not until today repudiated by this Court — that when a "mo-
vant has shown a meritorious defense," the grounds for relief
"are to be liberally construed." *Compton v. Alton S.S. Co.*, 608
F.2d 96, 102 (4th Cir. 1979) (internal quotation marks omit-
ted). Judge Russell then emphasized that

> [a]ny doubts about whether relief should be granted
> should be resolved in favor of setting aside the
> default. In short, any considerations of the need to
> expedite cases, to fully utilize the court's time, to

> reduce overcrowded calendars and to establish final-
> ity of judgments should never be used to thwart the
> objectives of the blind goddess of justice itself.

*Id.* at 102-03 (citations, internal quotation marks, and alter-
ations omitted).[1]

In resolving this matter, the district court and my fine col-
leagues in the panel majority both accept the undisputed
explanation of Robinson's lawyer that his law office's com-
puter and email problems prevented him from receiving elec-
tronic notification of Wix's summary judgment papers.
Nevertheless, the lawyer is faulted for failing to sufficiently
monitor court filings, thereby rendering acceptable the district
court's ex parte resolution of Wix's summary judgment
motion. As a result, the court's denial of relief under Federal
Rule of Civil Procedure 59(e) is deemed a valid exercise of
discretion. As explained below, I disagree.

More specifically, I espouse two primary bases for my dis-
senting view. First, the district court abused its discretion in
denying Robinson's Rule 59(e) motion, as it misapprehended
the compelling relevance of Robinson's assertion of a merito-
rious summary judgment defense. Second, to justify its affir-
mance, the panel majority finds it necessary — as did the
district court — to sponsor and apply a new duty to monitor
court filings for fear of ex parte proceedings (the "duty to moni-
tor").[2] Such a duty is antithetical to our notice-based adver-
sarial system.

---

[1]That neither *Smith* nor *Compton* involved Federal Rule of Civil Proce-
dure 59(e) or a summary judgment award does not undermine the wise and
longstanding principles enunciated therein. In this appeal, we are assessing
one overarching issue: whether the district court properly considered Rule
59(e)'s concern for preventing manifest injustice. This issue implicates, in
my humble view, the storied and time-honored wisdom of Judges Winter
and Russell.

[2]The panel majority mentions various permutations of this duty, includ-
ing (1) literally checking the court's docket; and (2) contacting opposing
counsel or the court to verify the status of the case.

I.

Although the panel majority offers a brief synopsis of the circumstances of this appeal, the following are essential to its proper understanding and resolution. On August 8, 2008, Wix filed its motion for summary judgment. Robinson's response was due on August 25, 2008; none was filed. On September 9, 2008, the district court rescheduled the trial of the case — originally set for December 2008 — to February 17, 2009. On December 3, 2008, the court awarded summary judgment to Wix.

Nine days after the summary judgment award, on December 12, 2008, Robinson filed his motion for relief from the judgment and to alter and amend it, pursuant to Rules 59 and 60 of the Federal Rules of Civil Procedure (the "Rule 59(e) motion"). In support thereof, Robinson filed the affidavit of his lawyer, as well as the corroborating affidavit of his lawyer's paralegal, attesting to the lawyer's failure to receive notice of Wix's motion for summary judgment. The lawyer's affidavit specified, inter alia, the following:

- He "at no point and time received notice that the Motion for Summary Judgment had been filed by [Wix's] counsel prior to the Court's December 3, 2008 Order of Dismissal," J.A. 110;

- He "did not receive electronic notification of the e–mail transmission on August 8, 2008," *id.*;

- He "did not receive the notice due to [his] firm's computer system problems," *id.* at 111; and

- He had never failed, in "ten (10) years of practicing law, . . . to respond to a Motion for Summary Judgment," *id.* at 112.

In urging relief from the judgment, Robinson contended that the court should consider his assertion of a meritorious opposition to Wix's summary judgment motion.

On December 23, 2008, Wix responded to the Rule 59(e) motion, asserting that Wix "received a Notice of Electronic Filing . . . after the [summary judgment] motion was filed." J.A. 161. Wix further maintained that it "received no notice that the attempted service was unsuccessful." *Id.* Wix did not, however, submit any supporting affidavits or evidence, such as the Notice of Electronic Filing of the summary judgment motion.

On January 13, 2009, the day after Robinson filed his reply to Wix's response (further specifying his assertion of a meritorious opposition to summary judgment), the district court denied the Rule 59(e) motion by its Memorandum of Decision and Order (the "Order of Denial"). At no point did the court receive any evidence other than the affidavits and records submitted by Robinson's lawyer in support of the Rule 59(e) motion. Nevertheless, the Order of Denial's procedural review recites that a Notice of Electronic Filing "generated by the Court's ECF system indicates that notice of [Wix's motion and supporting papers] was electronically mailed to [Robinson's] counsel on August 8, 2008. There is nothing in the ECF system to indicate that the transmission of these NEF's to [Robinson's] counsel was not successful." J.A. 179-80. Although the court accepted Robinson's lawyer's explanation that computer problems prevented his receipt of the electronic notice of the summary judgment papers, it ruled that "these computer problems did not relieve [Robinson's] counsel of his obligation to continue to monitor the docket in this case." *Id.* at 183.

To deny the Rule 59(e) motion, the court relied on its view that any meritorious summary judgment defense was irrelevant and on the fact that counsel had failed to monitor the

docket and maintain his firm's domain name registration. The court explained:

> Given counsel's apparent failure to monitor the Court's docket and the lack of any evidence of an error in the docketing of [Wix's] Motion in the Court's ECF system, and the fact that at least some portion of [Robinson's] counsel's e-mail problems stemmed from counsel's failure to maintain his firm's domain name registration, the Court concludes that the failure of counsel does not constitute excusable neglect and that altering or amending the Judgment is not necessary to prevent manifest injustice in this case. *See Fox[ v. Am. Airlines, Inc.]*, 295 F. Supp. 2d [56,] 60 [(D.D.C. 2003), *aff'd*, 389 F.3d 1291 (D.C. Cir. 2004)].

> [Robinson] further contends that there are genuine issues of material fact which should preclude the granting of summary judgment in this matter. The fact that [Robinson] may have a meritorious opposition to [Wix's] Motion for Summary Judgment, however, does not constitute a proper basis for reconsideration of the Court's Judgment. A Rule 59(e) motion "may not be used . . . to raise arguments which could have been raised prior to the issuance of the judgment . . . ." *Pac[.] Ins. Co. [v. Am. Nat'l Fire Ins. Co.]*, 148 F.3d [396,] 403 [(4th Cir. 1998)]. Accordingly, [Robinson's] Motion to Alter or Amend the Judgment on this basis must be denied.

J.A. 185-86 (omissions in original).

Although it disavows so doing, the panel majority likewise adopts a duty to monitor. Indeed, the majority never rejects the district court's recognition of such a duty, and, in its Rule 59(e) analysis, the majority applies such a duty in order to jus-

tify its affirmance. Nevertheless, the majority initially describes a somewhat more circumspect duty to monitor, correlated to the knowledge Robinson's lawyer had of the motions' deadline and his computer problems. *See, e.g.*, *ante* at 7 ("Knowing that dispositive motions were due on August 8, 2008, Appellant's counsel had good reason, after realizing he was experiencing computer problems, to check the court's docket after such date or contact the court and opposing counsel to notify them of his computer troubles.").[3] Thereafter, however, the majority expands this duty through reference to a lawyer's ethical duties. *See id.* at 7-8 n.7.[4]

Additionally, in its discussion of Rule 60(b), the majority enshrines an unbounded duty to monitor. *See ante* at 16 (concluding that "a party has a duty of diligence to inquire about the status of a case" and that Robinson's counsel "should have regularly accessed the court's docket to monitor case activity . . . or found another way to stay informed regarding any developments in the case" (internal quotation marks and alteration omitted)). Compounding the problematic nature of the majority's approach are the myriad problems inherent in this new duty, including its inversion of the obligations enunciated by the Civil Rules, and the inescapable reality that any Rule

---

[3]Notably, the panel majority simply ignores Federal Rule of Civil Procedure 5(b)(2)(E), which provides that electronic service "is not effective if the serving party learns that it did not reach the person to be served." As explained below, this Rule mandated that Wix again attempt service after learning that Robinson had not received electronic service.

[4]In order to rule as it does, the majority emphasizes its view that the ethics rules on attorney diligence and competence justify the imposition of its duty to "check the court's docket . . . or contact the court and opposing counsel." *Ante* at 7. This duty to monitor, as further explained below, runs counter to the Civil Rules (which always place the obligation of service on the movant) and requires the majority to engage in appellate fact-finding (which contravenes a basic tenet of our legal system). Thus, I disagree with the majority's use of the rules of ethics to justify its new duty to monitor, its beyond-the-rules doctrine of "constructive service," and its appellate fact-finding.

60(b) analysis is, as the majority itself recognizes, foreclosed by our circuit precedent.[5]

Moreover, the absence of any evidentiary hearing below does not prevent the panel majority from going well beyond the district court and performing its own fact-finding, including findings on Robinson's lawyer's state of mind.[6] Crucially, such improper fact-finding is central to the majority's abuse-of-discretion analysis. *See ante* at 10 ("[B]ecause Appellant's counsel was willfully blind . . . , we cannot say that the district court abused its discretion . . . ."); *see also id.* at 9 (finding that "the district court[ ] implicit[ly] conclu[ded] that Appellant's counsel opted to engage in willful blindness"). It is axiomatic, however, as our Judge Hall eloquently explained, that appellate courts do not make factual findings. *See Columbus-Am. Discovery Group v. Atl. Mut. Ins. Co.*, 56 F.3d 556, 575-76 (4th Cir. 1995) ("It is a basic tenet of our legal system that, although appellate courts often review facts found by a judge or jury . . . , they do not make such findings in the first instance."); *see also Maine v. Taylor*, 477 U.S. 131, 144-45 (1986) ("[F]actfinding is the basic responsibility of the district courts, rather than appellate courts." (internal

---

[5]Pursuant to our circuit's so-called *CODESCO* rule, the district court correctly construed Robinson's motion as solely seeking Rule 59(e), and not Rule 60(b), relief. *See MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 277-78 (4th Cir. 2008) (citing *Dove v. CODESCO*, 569 F.2d 807, 809 (4th Cir. 1978)). Thus, the majority's discussion on the appropriateness of Rule 60(b) relief is simply *obiter dicta*.

[6]In a similar fashion, the panel majority mischaracterizes the Order of Denial and engages in fact-finding regarding the district court's CM/ECF system. *See ante* at 4-5, 6-7. No evidentiary hearing was ever conducted, nor was the CM/ECF system examined to determine whether a pertinent Notice of Electronic Filing was ever successfully transmitted. *Cf. Am. Boat Co., Inc. v. Unknown Sunken Barge*, 418 F.3d 910, 914 (8th Cir. 2005) (recognizing need for evidentiary hearing on delivery of electronic notice); *Dempster v. Dempster*, 404 F. Supp. 2d 445, 449-50 (E.D.N.Y. 2005) (same). Importantly, the mere transmission, as opposed to receipt, of such electronic notice is insufficient to accomplish service under the Civil Rules. *See infra* Part III.A.

quotation marks omitted)).**[7]** Accordingly, I am unable to accede to the majority's unwarranted factual findings in resolving this appeal.

With this background in mind, I turn to a more detailed explanation of why I must dissent.

## II.

First, the district court abused its discretion in ruling that it need not consider Robinson's assertion of a meritorious defense. As a preliminary matter, the panel majority is simply incorrect in asserting that Robinson failed to pursue his meritorious opposition contention on appeal. Robinson raised this issue in all three argument sections of his opening brief. *See, e.g.*, Br. of Appellant 14 ("[Robinson's] argument that equitable relief should be granted . . . because of the existence of a meritorious defense was likewise ignored by the District Court."); *id.* at 18 (explaining that "[w]ithout [Robinson's] response[,] there was no record of [Robinson's] meritorious defense," and "[t]he lack of record . . . is a manifest injustice"); *id.* at 26 (asserting that the district court "abuse[d] . . . its discretion" in "refus[ing] to consider the prerequisite issue of a meritorious defense"). The majority simply ignores the fact that Robinson has consistently sought — from the time he first filed his Rule 59(e) motion until today — alternative relief under both Rule 59 and Rule 60. It engages in a hyper-technical parsing of Robinson's papers, sorting "Rule 59 con-

---

**[7]**Compounding the problematic nature of the panel majority's foray into fact-finding is the unsoundness of its determination that the "district court's implicit conclusion [was] that Appellant's counsel opted to engage in willful blindness." *Ante* at 9. The district court made no such implicit conclusion; rather, it explicitly ruled that his office's "computer problems did not relieve [Robinson's] counsel of his obligation to continue to monitor the docket in this case." J.A. 183. This ruling, as well as the factual findings made by the district court, *see ante* at 4-5 n.5, simply demonstrate that the district court concluded that Robinson's lawyer failed to comply with the new duty to monitor, not that he was willfully blind.

tentions" from "Rule 60 contentions," in order to say that
Robinson waived a contention that he has maintained
throughout this litigation — that the district court ignored his
assertion of a meritorious defense. Indeed, Wix itself under-
stood this contention to have been raised on appeal, *see* Br.
of Appellees 22-27, and the lawyers came to oral argument
prepared to answer meritorious opposition inquiries, which
consumed a substantial portion of their time. Put simply, the
majority's position — that the meritorious opposition asser-
tion was not raised on appeal — is unfounded.[8]

Turning to the merits of Robinson's contention, we have
heretofore explained, in reversing the denial of Rule 59(e)
relief, that "'[a]buse of discretion' is a legal term of art; it is
not a wooden term but one of flexibility, dependent on the
type of case in which it is to be applied and the posture of the
case when it arises." *Collison v. Int'l Chem. Workers Union,
Local 217*, 34 F.3d 233, 236 (4th Cir. 1994) (internal quota-
tion marks omitted). Nevertheless, it is beyond peradventure
that "[a] district court abuses its discretion when it fails to
take relevant factors intended to guide its discretion into
account or when it acts on the basis of legal or factual misap-
prehensions respecting those factors." *Pac. Ins. Co. v. Am.
Nat'l Fire Ins. Co.*, 148 F.3d 396, 402-03 (4th Cir. 1998)
(internal quotation marks omitted).

Rule 59(e), unlike Rule 60(b), includes no itemized list of
potential bases for relief. We have consistently recognized,
however, three bases for amending a judgment under Rule
59(e): "(1) to accommodate an intervening change in control-
ling law; (2) to account for new evidence not available at trial;

---

[8]The majority's position on this point is also strikingly ironic, given its
assertion that Robinson waived his Rule 60(b) contention by not arguing
it before the district court. *See ante* at 12 n.10. The majority opinion nev-
ertheless proceeds to address the merits of Robinson's Rule 60(b) conten-
tion, notwithstanding this purported waiver and the inescapable reality that
the opinion's Rule 60(b) assessment is purely dicta.

or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins.*, 148 F.3d at 403; *see also EEOC v. Lockheed Martin Corp., Aero & Naval Sys.*, 116 F.3d 110, 112 (4th Cir. 1997) (same); *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993) (same). It is the second aspect of the third factor — to "prevent manifest injustice" — that is implicated by this appeal.

In its Order of Denial, the district court recognized that Robinson "contends that there are genuine issues of material fact which should preclude the granting of summary judgment in this matter." J.A. 185. The court nonetheless disregarded this "meritorious opposition" contention, ruling — absent any supporting authority — that "[t]he fact that [Robinson] may have a meritorious opposition to [Wix's] Motion for Summary Judgment . . . does not constitute a proper basis for reconsideration of the Court's Judgment." *Id.* To justify its refusal to consider Robinson's contention — namely, that he possessed a meritorious defense to the summary judgment motion — the district court latched on to the unremarkable proposition that Rule 59(e) should not be used merely to pursue a contention that could have been raised prior to judgment. *See id.* This maxim, however, is entirely inapt in these circumstances, for Robinson was not seeking to "relitigate old matters" or "complete presenting his case after the court . . . ruled against him." *Pac. Ins.*, 148 F.3d at 403 (internal quotation marks omitted). Rather, Robinson was asserting a failure of notice with respect to the summary judgment motion itself. Thus, this is not a situation where a party, having lost on his first theory, sought in post-judgment proceedings to present an alternate contention on the merits. Instead, Robinson sought to rectify an adverse ex parte summary judgment award by presenting to the court — for the first time — his assertedly meritorious defense thereto. Stated most succinctly, Robinson sought to litigate, not relitigate.

The district court therefore erred in misunderstanding the relevance of Robinson's assertion of a meritorious defense.

As Wix's lawyer conceded at oral argument, "manifest injustice" is an inclusive concept that encompasses, inter alia, the impact of the challenged ruling on Robinson. Consequently, whether Robinson asserted a meritorious defense is an important factor in the "manifest injustice" calculus. *See Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007) (recognizing, in context of lawyer's failure to respond to summary judgment motion, that court could consider plaintiff's contentions).[9] The foregoing principle is particularly applicable here, in that the summary judgment award was premised on the facts being deemed "undisputed" solely because Robinson did not respond to the summary judgment motion. *See* J.A. 86 ("[Robinson] has failed to respond to [Wix's] motion, and therefore, the facts presented by [Wix] are not in dispute.").[10] Accordingly, the court's wholesale disregard of Robinson's assertion of a meritorious defense was an abuse of its otherwise substantial discretion. *See Pac. Ins.*, 148 F.3d at 402-03 ("A district court abuses its discretion when it fails to take relevant factors intended to guide its discretion into account or when it acts on the basis of legal or factual misapprehensions respecting those factors." (internal quotation marks omitted)).

The Order of Denial is particularly troubling in the context of our longstanding recognition that "the sanctions for attor-

---

[9]The majority also misreads our *Zinkand* decision by claiming that "*Zinkand* presupposes as a threshold matter the determination that the reasons for noncompliance are compelling." *See ante* at 11 n.9. Contrary to the majority's view, in *Zinkand* "the district court was dealing with a situation where Zinkand's prior counsel apparently had simply refused to go forward with Zinkand's case." 478 F.3d at 637. The *Zinkand* court explicitly acknowledged that the record only hinted at the reasons for this conduct, but — "whatever the reason" for the failure — we did not reexamine the court's decision to hear new evidence and additional legal argument. *Id.*

[10]Under our *CODESCO* rule, Robinson could not seek relief from the summary judgment award through Rule 60(b). Application of the *CODESCO* rule therefore heightened the necessity of factoring Robinson's assertion of a meritorious defense into the manifest injustice calculus.

ney neglect should be borne if at all possible by the attorney himself rather than by his client." *Dove v. CODESCO*, 569 F.2d 807, 810 (4th Cir. 1978).[11] Our Court has long espoused this principle, in part because "[d]ismissals for misconduct attributable to lawyers and in no way to their clients invariably penalize the innocent and may let the guilty off scott-free." *Smith v. Bounds*, 813 F.2d 1299, 1304 (4th Cir. 1987) (internal quotation marks and alteration omitted). Moreover, settled principles of public policy call for resolving lawsuits on their merits and on well-developed records. *See Lockheed Martin*, 116 F.3d at 112; *CODESCO*, 569 F.2d at 810. Indeed, as Judge Winter emphasized in *Smith*, "public confidence in the legal system is undermined when a litigant's claim is dismissed due to the blameworthy actions of [his] counsel." 813 F.2d at 1304. And we have consistently acknowledged that a legal malpractice action is a poor substitute for resolving a litigant's case on its merits. *See id.* Ignoring Robinson's assertion of a "meritorious opposition" disregards these laudable principles.

I would therefore vacate the Order of Denial and remand to the district court, ruling that it abused its discretion by failing to consider Robinson's assertion of a meritorious opposition in deciding whether Rule 59(e) relief was necessary to prevent manifest injustice. *See Pac. Ins.*, 148 F.3d at 402-03; *see also United States v. Lynn*, 592 F.3d 572, 585 (4th Cir. 2010) (explaining that, "because there is no indication that the district court considered the defendant's nonfrivolous arguments," it abused its discretion). Indeed, in a similar circumstance, we recognized that Rule 59(e) relief was appro-

---

[11]Additionally, the Order of Denial apparently misapprehended the role of the district court in sustaining the erroneous impression that no dispositive motions had been filed. By rescheduling the trial after the deadline for Robinson's summary judgment response had passed, the court may have created the impression that the matter was progressing apace to trial, when in fact Robinson was overdue in his response. Notably, this rescheduling further undercuts the majority's improper factual finding that Robinson's lawyer was somehow engaged in "willful blindness." *See ante* at 8, 9.

priate when a plaintiff, after an adverse summary judgment ruling, was able to demonstrate that genuine issues of material fact were nevertheless in dispute. *See Zinkand*, 478 F.3d at 637 (explaining that, but for a legal misapprehension, "obviously the district court would have granted the Rule 59(e) motion" where plaintiff demonstrated that genuine issues of material fact were disputed).[12]

### III.

### A.

In order to justify its conclusion today, the panel majority finds it necessary to sponsor and apply a duty to monitor court filings for fear of ex parte proceedings. *See, e.g.*, *ante* at 7-8 n.7; *see also id.* at 16-17. Such a duty is antithetical to our notice-based adversarial system. *See* Fed. R. Civ. P. 5. Although the majority utilizes a somewhat vague and ambiguous rule, this duty is nevertheless intended to be applied in retroactive fashion, as a judge's "common sense and mature judgment" may dictate. *See ante* at 18. Such a duty will be impossible to fairly assess or apply, and simply translates to a rule of constructive service of legal papers that contradicts the applicable provisions of the Federal Rules of Civil Procedure.

More specifically, the majority's duty to monitor contradicts the Civil Rules' requirement that written motions be served by the movant on every party. *See* Fed. R. Civ. P. 5(a)(1)(D). Although Rule 5, entitled "Serving and Filing Pleadings and Other Papers," authorizes such service to be

---

[12]As further explained below, the district court also abused its discretion by creating from whole cloth — and then applying retroactively — the new duty to monitor, an obligation the majority is willing to apply but not explicitly adopt. Accordingly, the district court made a separate and independent error of law when it created and applied this expansive monitoring obligation.

effectuated by electronic means, it does not, contrary to the newly invented duty to monitor, authorize anything approaching "constructive service" — i.e., service deemed effective solely by virtue of the electronic filing. Indeed, the Rules explicitly disclaim such an approach, warning that electronic service "is not effective if the serving party learns that it did not reach the person to be served." *See* Fed. R. Civ. P. 5(b)(2)(E); *see also* W.D.N.C. R. 5.3(A) (providing that the Notice of Electronic Filing "constitutes proof of service of the filed document upon all registered users unless the filing party learns that such attempted service was not successful"). This explicit caveat — that electronic service is not effective if the serving party learns that it did not reach the intended recipient — is especially striking given the absence of any such qualification for service by mail. *See* Fed. R. Civ. P. 5(b)(2)(C) (providing simply that service by mail "is complete upon mailing"). Notably, Rule 5 imposes no time limitation on the protection afforded to litigants by the electronic service caveat — and the pertinent Advisory Committee Notes establish that this omission was a conscious and carefully considered decision.

The Advisory Committee Notes to the 2001 Amendments to Rule 5 explain that the electronic service caveat, which was initially contained in Rule 5(b)(3),

> *defeats service by electronic means if the party making service learns that the attempted service did not reach the person to be served.* It says nothing about the time relevant to learning of the failure. The omission may seem glaring. Curing the omission, however, requires selection of a time.

Fed. R. Civ. P. 5 Advisory Committee Notes to 2001 Amendments (Changes Made After Publication and Comments) (emphasis added) (internal quotation marks omitted). The Committee Notes further explain that the "issue deserves careful consideration by the Standing Committee" and that a

proposed version of the Appellate Rule on service, Rule 25(c), included a durational limitation, i.e., a deadline of three days. *Id.* Notably, however, as ultimately adopted, Appellate Rule 25(c) contains no such deadline, providing simply that electronic service (as with Rule 5(b)(2)(E)) "is complete on transmission, unless the party making service is notified that the paper was not received by the party served." Fed. R. App. P. 25(c)(4). The Advisory Committee Notes on Rule 25 explain that

> [t]here is one exception to the rule that electronic service is complete upon transmission: If the sender is notified — by the sender's e-mail program or otherwise — that the paper was not received, service is not complete, and the sender must take additional steps to effect service.

Fed. R. App. P. 25 Advisory Committee Notes to 2002 Amendments.

Accordingly, under the plain and unambiguous terms of Rule 5(b)(2)(E), when Robinson's lawyer informed the district court and Wix's lawyers — by way of the Rule 59(e) motion — of the failure of electronic service of the summary judgment papers, that notification defeated Wix's attempted service of those papers.[13] The panel majority does not address this reality, nor does it acknowledge that application of the duty to monitor is diametrically opposed to the precepts of service and notice enshrined in the Civil Rules.

---

[13]Had Wix's lawyer mailed a courtesy copy of the summary judgment papers — which Robinson's lawyer asserts is the customary local practice — this entire debacle would have been avoided and, more importantly from Wix's perspective, service would have been accomplished. *See* Fed. R. Civ. P. 5(b)(2)(C). Nevertheless, as Wix's lawyer chose electronic service only, his duty to serve — imposed on the movant under the Civil Rules (the majority's contrary position notwithstanding) — was reanimated by Robinson's notification that such service had not been received.

To justify its duty to monitor — which effectively transfers the burden of service from the movant's lawyer to the recipient's lawyer — the panel majority relies on the D.C. Circuit's decision in *Fox v. American Airlines, Inc.*, a materially distinguishable case. *See* 389 F.3d 1291 (D.C. Cir. 2004). First, that decision primarily concerned whether the "straightforward application of [that circuit's] Local Rule 7(b)," which treats unopposed motions as conceded, was an abuse of discretion. *Id.* at 1294. Second, more than a month after the defendant filed its motion to dismiss, the plaintiffs' lawyer filed a "joint meet and confer statement and proposed scheduling order" referencing the "pending" motion to dismiss. *Id.* The D.C. Circuit emphasized that, in such circumstances, "it is difficult to understand how counsel did not recognize that the 'pending' motion to dismiss he repeatedly referenced . . . related to the amended complaint," particularly because "his failure to receive a timely answer to the amended complaint [s]hould have aroused his suspicion." *Id.* (emphasis omitted). *Fox* thus involved a vastly different scenario from the one presented here.

Exacerbating the difficulties attendant to the majority's reliance on *Fox* is that the decision was largely predicated on concerns for docket management. *See Fox*, 389 F.3d at 1295 ("Requiring [the court] to provide notice, [and] an opportunity to explain and weigh alternatives before enforcing Rule 7(b) would hinder effective docket management."). Yet, our Court has — until today — traditionally adhered to the principle espoused by Judge Russell and his distinguished panel that "considerations of the need to expedite cases, to fully utilize the court's time, to reduce overcrowded calendars and to establish finality of judgments should never be used to thwart the objectives of the blind goddess of justice itself." *Compton v. Alton S.S. Co.*, 608 F.2d 96, 103 (4th Cir. 1979) (internal quotation marks and alteration omitted).

B.

The panel majority compounds the problematic nature of its duty to monitor in two important respects. First, it imputes

such a duty to the client personally and, in so doing, disregards the malpractice implications thereof. Second, the majority devises this obligation in the absence of any corollary duties for movants' lawyers and the courts.

1.

In imputing Robinson's lawyer's actions to Robinson personally, the panel majority erroneously relies upon readily distinguishable authorities. For instance, *Gayle v. United Parcel Service* concerned "whether attorney negligence justifies equitable tolling sufficient to excuse the lack of compliance with [an ERISA] plan's appeal procedure." 401 F.3d 222, 224 (4th Cir. 2005). The issue presented in *Gayle* is, of course, very different from the inquiry here: whether to impute constructive service of summary judgment papers to Robinson, predicated solely on his lawyer's failure to comply with the newly devised (but retroactive) duty to monitor.[14]

The Supreme Court's decision in *Link v. Wabash Railroad Co.* — a case regarding the dismissal of a lawsuit that had been pending for more than six years — is also readily distinguishable. *See* 370 U.S. 626 (1962). Link's lawyer did not attend a scheduled pretrial conference — despite full knowledge thereof — because he "was busy preparing papers to file with [another court]." *Id.* at 628. Moreover, Link's lawyer had

---

[14]Meanwhile, *Universal Film Exchanges, Inc. v. Lust* involved a lawyer who, knowing that papers were only served on counsel of record, "deliberately chose not to enter an appearance, chose not to file an answer that would have made known to the court his client's defense, and allowed [another lawyer] to continue on as [his client's] sole counsel of record." 479 F.2d 573, 575 (4th Cir. 1973). Months after the plaintiff was awarded summary judgment against all defendants — on an unopposed motion — the non-record lawyer filed a motion for relief, which was denied because, inter alia, notice of the motion and judgment "were properly served on the only attorney who had entered an appearance for [the defendant]." *Id.* at 576. That situation is a far cry from this case, where the summary judgment papers were not served on *any* lawyer for Robinson.

a history of dilatory conduct. *Id.* at 634 n.11. Notably, in upholding dismissal, the Court explained that "the fundamental requirement of due process is an opportunity to be heard upon such notice and proceedings as are adequate," with adequacy correlated, in large part, to the knowledge the party has of the consequences of his conduct. *Id.* at 632 (internal quotation marks omitted).[15] The Court then observed that each party "is considered to have notice of all facts, notice of which can be charged upon the attorney." *Id.* at 634 (internal quotation marks omitted).[16] Here, notice of Wix's summary judgment papers cannot fairly "be charged upon the attorney" and therefore cannot be imputed to Robinson. Thus, the cautionary words of Justice Black in *Link* have much force:

> [I]t is of very great importance to everyone in this country that we do not establish the practice of throwing litigants out of court without notice to them solely because they are credulous enough to entrust their cases to lawyers whose names are accredited as worthy and capable by their government. I fear that this case is not likely to stand out in the future as the best example of American justice.

*Link*, 370 U.S. at 649 (Black, J., dissenting).

Rather than confronting these realities, the panel majority has itself "opted to engage in willful blindness" toward the adverse implications of its duty to monitor. *See ante* at 9. In so doing, it disregards the time-honored principles espoused by Judges Winter and Russell, effectively repudiating *sub*

---

[30]Notably, the Court's decision in *Link* was premised in part on the availability of post-judgment relief as an "escape hatch." *See* 370 U.S. at 632. Ironically, the panel majority today imputes a lawyer's alleged failings to his client precisely to foreclose any post-judgment relief.

[16]Importantly, this explication completes the passage relied on by the majority, *see ante* at 9 (providing that a party cannot "'avoid the consequences of the acts or omissions of this freely selected agent'" (quoting *Link*, 370 U.S. at 633-34)).

*silentio* the wisdom of those eminent jurists. Notably, except for the concurrence's blithe statement that "[f]or practitioners in the legal profession, unlike those in some others, he who fails to pay attention may one day have to pay up," *ante* at 18, the majority fails to address the malpractice implications of its duty to monitor.[17] As Judge Winter warned, the approach advocated by the majority "invariably penalize[s] the innocent and may let the guilty off scott-free." *Smith v. Bounds*, 813 F.2d 1299, 1304 (4th Cir. 1987) (internal quotation marks omitted). In addition to increasing the risk that the underlying tortfeasor will escape liability, the duty to monitor will increase the exposure of lawyers to malpractice liability. And it will, logically, also increase their malpractice insurance rates.[18] Moreover, it will merely substitute — case-by-case — one lawsuit for another, with the new lawsuit being the ex-client against his former lawyer. Judge Winter would surely be shocked by such a development. In short, application of the duty to monitor itself flouts "our longstanding tradition to secure the just, speedy, and inexpensive determination of every action and proceeding." *See ante* at 10-11 n.9 (internal quotation marks omitted).

---

[17]We have recognized that, in granting judgment against a litigant based on the failings of counsel, it is proper for the court to first take account of the availability of less severe sanctions, such as punishment imposed solely on the lawyer. *See, e.g.*, *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 811 (4th Cir. 1988) (observing that "the trial court may nonetheless impose other sanctions against the offending attorney, such as awarding the non-movant's costs and attorney's fees").

[18]An additional impact of the duty to monitor will be, of course, the expense of checking the dockets. Given the undefined parameters of this new duty, a lawyer would be well-advised to repeatedly check the docket of each case, notwithstanding the absence of any Notices of Electronic Filing. The Judicial Conference imposes charges for such endeavors. *See Electronic Public Access Fee Schedule*, http://pacer.psc.uscourts.gov/documents/epa_feesched.pdf. As such, the duty to monitor will impose an untoward burden in time and money on lawyers — particularly sole practitioners, those in small firms, those who are not technologically sophisticated, and those with high-volume litigation practices. Such increased costs will also harm litigants, who ultimately will be charged with the additional costs.

## 2.

Finally, to the extent the panel majority deems it proper to craft (and retroactively apply) a new duty for recipient lawyers, it would be at least as appropriate to create corollary duties and obligations for moving attorneys and courts. For example, because the lawyer who filed the motion would necessarily be aware of both its filing and its unresolved nature, it would be as logical, if we were inventing rules outside the rulemaking process, to impose on the movant's attorney the duty to file and serve some notice of ripeness when the deadline has passed without a response. Similarly, we could impose on the court an obligation to notify counsel prior to ruling on a dispositive motion to which no response has been interposed. Naturally, however, the proper approach for creating any such rules would be through the established procedures for amending the Civil Rules, which would ensure the prospective and evenhanded imposition of additional obligations on lawyers and the courts.

## IV.

Contrary to the panel majority, I would rule that the district court abused its discretion in denying Robinson's Rule 59(e) motion, specifically in failing to properly consider his assertion of a meritorious summary judgment defense. I also reject the duty to monitor sponsored and applied by the district court and the majority — a duty essential to their resolution of this case but antithetical to our notice-based adversarial system.

Accordingly, I would vacate the Order of Denial and remand for such other proceedings as may be appropriate.

I respectfully dissent.